No. 04-543

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 303

NATHAN A. MUNN,

       Petitioner and Appellant,

   v.

MONTANA BOARD OF MEDICAL EXAMINERS,

       Respondent and Respondent.


APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark, Cause No. BDV 2003-746,
                The Honorable Jeffrey M. Sherlock, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

       Wendy Holton, Attorney at Law, Helena, Montana

       For Respondent:

       Ann O'Leary, Legal Services Division, Department of Labor & Industry,
       Helena, Montana


                Submitted on Briefs:  April 20, 2005

                      Decided:  December 6, 2005

Filed:


                  _____
                             Clerk

Justice John Warner delivered the Opinion of the Court.

¶1      Nathan A. Munn (Munn) appeals from an order of the First Judicial District Court, Lewis and Clark County, affirming a decision of the Board of Medical Examiners (Board) to revoke Munn's medical license.  We affirm.

¶2      We restate and address the following issues on appeal:

¶3      1.  Was the Board's decision to impose upon Munn a harsher penalty than that recommended by the hearing examiner contrary to law?

¶4      2. Was the punishment imposed upon Munn by the Board clearly erroneous, arbitrary or capricious?

### BACKGROUND

¶5      Munn, a psychiatrist, was licensed to practice medicine in Montana in 1993.  A complaint was filed against him with the Board on October 18, 2001, alleging he had improper sexual relations with a patient.  A hearing was held before Gregory L. Hanchett, (Hanchett), a Department of Labor and Industry Hearing Examiner, on May 21, 2003. Hanchett issued his findings of fact, conclusions of law, and proposed order on August 15, 2003.

¶6      According to Hanchett's findings of fact, which neither Munn nor the Department of Labor and Industry (Department) took exception to, Munn had been treating Jane Doe (Doe) from December 1997 to July 9, 1999.  The two became close during this time, and their families began to socialize together.  During Doe's therapy sessions, Munn would occasionally sit next to Doe, hold her hand, rub her back, and hug her.  Hanchett found that such actions were inappropriate therapy for an adult patient.  On July 9, 1999, Munn and

2

Doe engaged in sexual intercourse, and this affair continued for two years. Doe was vulnerable to Munn's sexual advances, having been a victim of both sexual abuse by her father and rape. Munn continued to prescribe medication for Doe.

¶7 Munn decided to end his relationship with Doe during the summer of 2001. Distraught with this development, Doe went to Munn's home in the middle of the night in September 2001, and began hitting Munn. Doe left, but later returned and claimed she had overdosed on tranquilizers. Munn decided that she had not overdosed, and Doe again left. Doe then called Munn, claiming she was suicidal. Munn called an ambulance to have Doe hospitalized, but the ambulance left when Doe convinced the crew that she was not suicidal. She then called Munn again, saying that she had fooled the crew and that she was suicidal. Munn then contacted another psychiatrist, Dr. John Tupper, to initiate protective custody of Doe. Munn informed Dr. Tupper of his relationship with Doe. Hanchett found that Munn would not have disclosed the relationship if not for Doe's actions in September 2001.

¶8 Shortly after the events of September 2001, Munn himself began therapy sessions with Dr. John Peters, who was also a psychiatrist. From these sessions, Dr. Peters concluded that Munn did not evidence dishonesty or a history suggestive of predatory sexual activity. Munn was also thoroughly evaluated by Dr. Robert Page at the urging of the Board. Dr. Page's evaluation was that Munn did not appear to purposely use his professional position to maneuver patients into sexual or physical contact with premeditation or a strategic purpose. Dr. Page further concluded that Munn did not appear to pose a threat of any predatory or sexually assaultive behavior to such a degree that it would be necessary to revoke his license to practice. There was no finding that Munn had engaged in inappropriate

3

touching or sexual acts with other patients. He had no history of deviant sexual behavior with any patient other than Doe.

¶9 According to Hanchett's conclusions of law, which neither Munn nor the Department took exception to, Munn had engaged in unprofessional conduct in violation of § 37-1-316(18), MCA, by engaging in conduct that did not meet generally accepted standards of practice. Since Munn continued to prescribe medications to Doe after July 9, 1999, the physician-client relationship was found to continue past that date. Munn was found to have exploited Doe through the physician-client relationship between them. Another allegation against Munn, that he had used Doe to obtain medications for his own use or use by a third party, was dismissed because the Department failed to meet its burden of proof.

¶10 In Hanchett's proposed order, he suggested five years probation for Munn on condition that he successfully complete 60 hours of remedial education. Hanchett also recommended that Munn enter into a contract with the Montana Professional Assistance Program to address boundary issues, be monitored, complete a treatment or therapy plan, complete a polygraph examination, refrain from acts of unprofessional conduct, and that Munn's license be suspended for 90 days. Munn filed an exception to the proposed 90-day suspension, and the Department filed exceptions to the entire order.

¶11 The exceptions filed by both Munn and the Department were considered during oral arguments before the Board on November 21, 2003. During this hearing, Anne O'Leary (O'Leary), a member of the Board and an attorney, said that, under § 2-4-621(3), MCA, the agency may not increase the recommended penalty without reviewing the complete record. She then opined that such an increase was possible in this case, because all members of the

4

Board indicated they had reviewed the complete record.

¶12 O'Leary also stated that a violation such as Munn's could result in revocation of his license under § 37-1-312, MCA, which mandates that the Board consider sanctions necessary to protect the public. She then explained how Munn's actions constituted sexual misconduct under the American Medical Association's standards of medical practice, and that Munn's actions were unethical under the American Psychiatric Association's principles of medical ethics. She went on to tell the Board that medical license revocations for sexual misconduct had been upheld by courts in multiple jurisdictions. She then said: "It is this board's duty to protect the public. If this board, presented with these flagrant admissions, findings of fact and conclusions of law, accepts the Hearing Examiner's proposed order, it is unlikely that it can ever act to revoke a Montana medical license for sexual misconduct." Finally, O'Leary concluded as follows: "Accepting the Hearing Examiner's proposed order means that the board is and will be accepting and allowing any so-called mitigating circumstances, disease, divorce, loneliness, anger, pathos, you name it, as an excuse for a physician to have sexual intercourse with a patient."

¶13 The Board issued its final order on November 25, 2003. This final order stated:

> The [Board] has reviewed the Hearing Examiner's Findings of Fact, Conclusions of Law and Proposed Order dated August 15, 2003 and the entire record in this matter including the transcript of the hearing held on May 21, 2003, all exhibits admitted into evidence and all prehearing motions, discovery requests, responses thereto, briefs of the parties and exceptions and responses to exceptions filed by the parties.

The Board accepted Hanchett's findings of fact and conclusions of law without modification. However, the Board ordered that Munn's license to practice medicine in Montana be revoked

5

with Munn being unable to reapply for a medical license in Montana for two years from the date of the final order. Munn petitioned the District Court to review the Board's decision to revoke his medical license.

¶14 The District Court affirmed the decision of the Board in an Order on Petition for Judicial Review issued May 28, 2004. The District Court held that the Board followed the procedure set forth in § 2-4-621(3), MCA, to increase the penalty against Munn, and the penalty increase was not an abuse of the Board's discretion. The District Court rejected Munn's argument that the Board's penalty increase was not supported by the findings of fact, noting that the Board consists of members of the medical profession with the expertise to determine an appropriate sanction and the authority to increase the proposed penalty. The District Court also rejected Munn's argument that the statements made by O'Leary were erroneous and that the Board's proceedings were affected by an error of law. The District Court noted that not only had O'Leary accurately described the procedure required by statute to increase the proposed penalty, she exercised an opportunity open to all Board members by offering her opinion on an appropriate penalty. The District Court went on to hold that the Board's increase of the penalty was not arbitrary or capricious. Munn now appeals the District Court's Order.

## STANDARD OF REVIEW

¶15 When a District Court reviews an agency decision, the applicable standard of review is as follows:

> (2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may

6

reverse or modify the decision if substantial rights of the appellant have been prejudiced because:

    (a)  the administrative findings, inferences, conclusions, or decisions are:

        (i)  in violation of constitutional or statutory provisions;

        (ii)  in excess of the statutory authority of the agency;

        (iii)  made upon unlawful procedure;

        (iv)  affected by other error of law;

        (v)  clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

        (vi)  arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

    (b)  findings of fact, upon issues essential to the decision, were not made although requested.

Section 2-4-704(2), MCA. We have adopted the following three-part test to determine if a finding is clearly erroneous:

(1) the record will be reviewed to see if the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, it will be determined whether the [deciding body] misapprehended the effect of evidence; and (3) if substantial evidence exists and the effect of evidence has not been misapprehended, the Supreme Court may still decide that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed.

*Weitz v. Mont. Dep't. of Natural Resources and Conservation* (1997), 284 Mont. 130, 133-34, 943 P.2d 990, 992 (citations omitted). We review a District Court's conclusions of law by determining whether the District Court correctly interpreted the law. *Tipp v. Skjelset* (1997), 285 Mont. 274, 277, 947 P.2d 480, 482 (citing *Carbon County v. Union Reserve Coal Co., Inc.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686).

DISCUSSION

ISSUE ONE

¶16    **Was the Board's decision to impose upon Munn a harsher penalty than that**

7

**recommended by the hearing examiner contrary to law?**

¶17    Munn argues that O'Leary gave erroneous advice to the Board during the hearing on November 21, 2003, and the Board violated § 2-4-621(3), MCA, in following that advice. Specifically, Munn challenges O'Leary's statement to the effect that accepting the Hearing Examiner's proposed order would mean that the Board accepted excuses for a physician having sexual intercourse with a patient. Munn contends that this statement effectively advised the Board that it had no discretion to impose a sanction other than revocation, and therefore the Board's decision was an error of law that must be reversed.

¶18    The Board argues that Munn's argument fails to recognize the process by which the Board increased the recommended sanctions against Munn. The Board also refers to the decision of the District Court which, in holding that the Board's decision was not affected by an error of law, explained that O'Leary accurately described the procedure required by statute to increase the proposed penalty, and that she exercised an opportunity open to all Board members by offering her opinion on an appropriate penalty.

¶19    Pursuant to § 37-1-131(2), MCA, the Board shall "sit in judgment in hearings for the suspension, revocation, or denial of a license of an actual or potential member of the particular profession or occupation within the board's jurisdiction." In deciding what sanctions are appropriate, the Board is bound to follow § 37-1-312(2), MCA, which provides in pertinent part: "To determine which sanctions are appropriate, the board shall first consider the sanctions that are necessary to protect or compensate the public. Only after the determination has been made may the board consider and include in the order any requirements designed to rehabilitate the licensee or license applicant." It is clear from these

8

statutes that the determination of a proper sanction is the duty of the Board, not the Hearing Examiner. The level of deference the Board must give to the findings of fact, conclusions of law, and proposed order of the Hearing Examiner is codified as follows:

> The agency may adopt the proposal for decision as the agency's final order. The agency in its final order may reject or modify the conclusions of law and interpretation of administrative rules in the proposal for decision but may not reject or modify the findings of fact unless the agency first determines from a review of the complete record and states with particularity in the order that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law. *The agency may accept or reduce the recommended penalty in a proposal for decision but may not increase it without a review of the complete record.*

Section 2-4-621(3), MCA (emphasis added). The statute makes clear that the Board may increase a recommended penalty, but it must review the complete record to do so.

¶20 In the present case, the Board did not commit an error of law when it increased the proposed penalty and revoked Munn's license to practice medicine. We fail to see how O'Leary gave the Board erroneous advice during the November 21, 2003, hearing. She explained that the Board could only increase the proposed penalty by reviewing the complete record. This is a correct statement of § 2-4-621(3), MCA. She mentioned that all members of the Board had indicated that they had reviewed the entire record. The Board's November 25, 2003, order stated that it had reviewed the entire record. The Board followed the relevant statutory requirement in increasing the proposed penalty.

¶21 We do not agree with Munn's contention that O'Leary's statement that to accept the Hearing Examiner's proposed order would mean that the Board would be accepting an excuse effectively advised the Board that it had no discretion to impose a sanction other than

9

revocation. This is merely a statement of one board member's opinion that the proposed penalty was insufficient. As the District Court correctly noted, other board members had the same opportunity to express their opinions. The Board's decision was not contrary to law.

ISSUE TWO

¶22 **Was the punishment imposed upon Munn by the Board clearly erroneous, arbitrary or capricious?**

¶23 Munn argues that the Board's decision to increase the penalty is clearly erroneous in view of the evidence, and that the Board's decision was arbitrary or capricious. In support of this argument, Munn calls our attention to Hanchett's sixteenth finding of fact, which includes Dr. Page's conclusion that Dr. Munn did not pose a threat to the public which would make it necessary to remove his license to practice. Munn also points us to portions of Hanchett's discussion of an appropriate sanction, where he writes that the factors in this case "militate against outright revocation," and "[i]t appears, however, that the public can be adequately protected through safeguards short of revocation." Munn says that the Board's decision to increase the proposed penalty contradicts with these parts of Hanchett's findings and conclusions. Munn argues that such contradiction violates our holding in *Dep't of Soc. and Rehabilitation Servs. v. Shodair Hosp.* (1995), 273 Mont. 155, 902 P.2d 21, as well as our holdings in *Frazier Sch. Dist. No. 2 v. Flynn* (1987), 225 Mont. 299, 732 P.2d 409; *Ulrich v. State Bd. of Funeral Serv.*, 1998 MT 196, 289 Mont. 407, 961 P.2d 126; *Brackman v. Bd. of Nursing* (1993), 258 Mont. 200, 851 P.2d 1055; and *Moran v. Shotgun Willies, Inc.* (1995), 270 Mont. 47, 889 P.2d 1185.

¶24 Additionally, Munn argues that the Board erred in not supporting its increase in the

10

proposed penalty with facts from the record. Munn argues that such support is implicitly required by the language in § 2-4-621(3), MCA, which says that a recommended sanction cannot be increased without review of the entire record.

¶25 The Board argues that the Board can impose a greater penalty than that suggested by the Hearing Examiner, as that power is explicit in § 2-4-621(3), MCA. The Board asserts that the Hearing Examiner can only recommend sanctions, while only it can impose sanctions. The Board also notes the language of the District Court that, since the Board includes members of the medical profession pursuant to § 2-15-1731, MCA, the Board has the expertise to determine an appropriate sanction.

¶26 In *Shodair*, the hospital had cared for a certain patient and sought reimbursement for this treatment from the Department of Social and Rehabilitation Services Medicaid Services Division. *Shodair*, 273 Mont. at 158, 902 P.2d at 23. A hearing examiner was appointed, and the hearing examiner issued extensive findings of fact, conclusions of law, and an order denying reimbursement. *Shodair*, 273 Mont. at 159, 902 P.2d at 23-24. Shodair appealed to the Board of Social and Rehabilitation Services Appeals (Appeals Board), which rejected the Hearing Examiner's findings of fact and substituted its own judgment for that of the hearing examiner. *Shodair*, 273 Mont. at 159, 902 P.2d at 24. The district court held that the Appeals Board erred in summarily rejecting the hearing examiner's findings and reinstated the hearing examiner's decision. *Shodair*, 273 Mont. at 159-60, 902 P.2d at 24. We affirmed the district court, noting that the Appeals Board could not reject or modify the hearing examiner's findings without stating with particularity that the findings were not based on competent substantial evidence. *Shodair*, 273 Mont. at 160, 902 P.2d at 24.

11

¶27 While Munn cites *Shodair* in support of his position that the Board's increase of the proposed penalty improperly contradicted Hanchett's findings of fact, conclusions of law, and proposed order, *Shodair* is distinguishable from the present case. As the District Court correctly explained:

> [I]n *Shodair* the [Appeals] Board had summarily rejected the findings of the hearing examiner and made its own findings that directly contradicted those of the hearing examiner. Here, the Board did not reject any of the hearing examiner's findings. Rather, the Board adopted the hearing examiner's findings and conclusions in their entirety but assigned those findings a different weight than the hearing examiner.

The other cases cited by Munn to support his position on this issue are distinguishable in the same manner. *See Frazier*, 225 Mont. at 303, 732 P.2d at 411 (State Superintendent improperly rejected County Superintendent's findings of fact); *Ulrich*, ¶¶ 29, 42 (Board of Funeral Service improperly rejected Hearing Examiner's findings of fact); *Brackman*, 258 Mont. at 209, 851 P.2d at 1060 (Board of Nursing improperly rejected Hearing Examiner's findings of fact); and *Moran*, 270 Mont. at 52-53, 889 P.2d at 1188 (Human Rights Commission improperly rejected Hearing Examiner's findings of fact). The Board's increase in the proposed penalty was not a finding of fact or a conclusion of law, but a sanction which it was statutorily authorized to impose.

¶28 The Board's increase in the proposed penalty was a sanction it was statutorily authorized to impose, and it was not arbitrary or capricious. Munn's argument that the sanction imposed by the Board improperly contradicts Hanchett's findings of fact and conclusions of law must also fail. Hanchett stated in his conclusions of law: "[i]t appears, however, that the public can be adequately protected through safeguards short of

12

revocation." This was Hanchett's opinion upon which he based his recommended order. However, a hearing examiner is not authorized by the statutes to conclude as a matter of law what a discretionary decision of the board must be. Section 2-4-621(3), MCA, makes it clear that the Board itself has the final say as to what is an appropriate sanction.

¶29 The same logic applies to Hanchett's sixteenth finding of fact, where he quotes Dr. Page's opinion that Munn did not pose a threat to the public which would make it necessary to remove his license to practice. This is Dr. Page's opinion about what is necessary to protect the public. The Board or the District Court can disagree with this opinion. Were this Court to hold that Dr. Page's opinion was a finding of fact that the Board could not reject, the Board would lose the authority to impose appropriate sanctions and this function would be placed in the hands of a hearing examiner. Given the statutes, which clearly state that the hearing examiner is to make a recommendation which may be modified by the Board, we decline to so hold. Section 2-4-621(3), MCA. The Board considers recommendations, but after a review of the complete record may use its expertise to independently fix appropriate sanctions. Since the Board did review the complete record, it had the statutory authority to impose what it considered to be the correct sanction, and its imposition of an increased penalty for Munn was not clearly erroneous.

¶30 Finally, we consider Munn's argument that the language in § 2-4-621(3), MCA, implicitly requires the Board to support its increase in the proposed penalty with facts from the record. While it may have been preferable for the Board to clearly explain why it chose to increase the proposed penalty, the statute does not require such an explanation. *See* § 2-4-621(3), MCA. It only requires the Board to examine the entire record before increasing the

13

sanction proposed by the hearing examiner.  As explained above, such examination took place here.

## CONCLUSION

¶31    We affirm the District Court's judgment that the Board's decision to increase the sanction recommended by its hearing examiner was not contrary to law.  We also affirm the District Court's judgment that the Board's decision was not clearly erroneous, and it was not arbitrary or capricious.

/S/ JOHN WARNER

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS

14

Justice W. William Leaphart dissenting.

¶32    I dissent.

¶33    Under MAPA, the Board has the discretion to determine the appropriate sanction. However, the Board cannot reject the Hearings Officer's findings of fact "unless the agency first determines from a review of the complete record and states with particularity in the order that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law." Section 2-4-621(3), MCA. At issue here is the Hearings Officer's delineated "finding of fact" number 16, in which he states:

> 16. Dr. Page concluded, among other things, that it did not appear that Munn would "purposely use his professional position to maneuver patients into sexual or physical contacts with premeditated or strategic purpose." Dr. Page further concluded that, "Overall, Dr. Munn does not appear to pose a significant threat to future patients in terms of risk of predatory or sexually assaultive behaviors to the degree to which it would be necessary to remove his license to practice. However, he does present with some concerns surrounding the emotional underpinnings which led him toward his ethical violations with a patient, which need further therapeutic investigation and intervention."

¶34    The Board did not conclude that the above finding of fact was not based upon competent substantial evidence. Accordingly, the Board could not "reject" the finding that Munn was not a threat to the public. As the Court recognizes, the Board, in fact, accepted the findings of fact without modification. The sanction of revoking Munn's license is thus fatally inconsistent with the finding that he presents no threat to the public.

¶35    The Court concludes that the Hearings Officer did not, himself, find that Munn was not a threat to the public. Rather, the Court reasons that the Hearings Officer did nothing

15

more than recite what Dr. Page testified to–that is, that in Dr. Page's opinion, Munn did not present a threat to the public making it necessary to remove his license. Unfortunately, the format used by the Hearings Officer is confusing. Although paragraph 16 states that Dr. Page "concluded," we cannot ignore the context of that paragraph: it is part of the "findings of fact." I also have to assume that the Hearings Officer would not have recited this testimony were he not adopting Dr. Page's conclusions. Furthermore, the determination as to whether someone poses a "threat" to the public is an issue of fact; it is not a conclusion of law.

¶36 For the above-stated reasons, I would hold that the Board was bound to accept the finding that Munn posed no threat to the public. That being the case, there was no basis to conclude that Munn's license should be revoked.

¶37 This case graphically illustrates how important it is for hearings officers and district courts to be clear in distinguishing findings of fact from conclusions of law and in distinguishing between a true finding of fact as opposed to a mere recitation of what evidence was presented. Ideally, if the hearings officer or district judge wants to summarize the proceedings or evidence presented, that summary should be presented under a separate heading–perhaps "procedural history" or "introduction." This would then be followed by the "findings of fact" which in turn form the basis for the "conclusions of law." Use of such categories in the present case, in all likelihood, would have obviated the need for this appeal.

/S/ W. WILLIAM LEAPHART

Chief Justice Karla M. Gray and Justice Jim Rice join the dissent of Justice Leaphart.


/S/ KARLA M. GRAY
/S/ JIM RICE


Justice James C. Nelson concurring in part:

While I do not join Justice Leaphart's dissent, I do concur with his observations in ¶ 37.


/S/ JAMES C. NELSON