No. DA 06-0171

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 337

_____

EKALAKA UNIFIED BOARD OF TRUSTEES
and WADE NORTHROP, SUPERINTENDENT
(Elementary District and High School District),

        Petitioners and Appellants,

   v.

EKALAKA TEACHERS' ASSOCIATION,
MEA-MFT, NEA,

        Respondents and Respondents.

_____

APPEAL FROM:    District Court of the First Judicial District,
                     In and for the County of Lewis and Clark, Cause No. ADV 05-457,
                     The Honorable Dorothy McCarter, Presiding Judge.


COUNSEL OF RECORD:

        For Appellants:

                Debra A. Silk and Tony Koenig, Montana School Boards Association,
                Helena, Montana

        For Respondents:

                Richard Larson, Harlen, Chronister, Parish & Larson, P.C., Helena,
                Montana

_____

                           Submitted on Briefs:  October 10, 2006
                                   Decided:  December 19, 2006

Filed:

_____
                         Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Ekalaka Unified Board of Trustees and Superintendent of Ekalaka Public Schools Wade Northrop (collectively the School District) appeal from the judgment and order of the First Judicial District Court, Lewis and Clark County, affirming the Final Order of the Board of Personnel Appeals (BOPA), determining that the School District had committed unfair labor practices. We affirm.

¶2 We review the following issue on appeal:

¶3 Was the District Court correct in affirming the Board of Personnel Appeals Final Order?

## FACTUAL AND PROCEDURAL HISTORY

¶4 Jeff Savage (Savage) interviewed for a teaching position with the Ekalaka School District in 2003. Superintendent Wade Northrop (Northrop) contacted Savage sometime after the interview to gauge Savage's interest in the teaching position. Savage informed Northrop that he would need $2,000.00 for moving expenses if he were to relocate to Ekalaka for the teaching position. Northrop agreed to deliver a $2,000.00 check to Savage when Savage visited Ekalaka to look at the school and the community. Northrop directed the School District clerk to issue the check and Northrop then personally delivered the check to Savage on June 29, 2003. The next day Northrop recommended to the Board of Trustees that the School District formally offer Savage the teaching position. The Board of Trustees adopted the recommendation and issued a teaching contract. Savage signed the contract on July 1, 2003.

¶5 Northrop made another offer of employment to Sherry Roberts (Roberts) on or about July 15, 2003. Roberts also requested moving expenses from Northrop, but Northrop denied her request on the grounds that he could not pay her more than the salary provided in the Collective Bargaining Agreement (CBA). The Board of Trustees later voted to hire Roberts.

¶6 The Ekalaka Teacher's Association (ETA) filed a charge with BOPA alleging that the School District had failed to bargain in good faith with ETA when the school district agreed to pay Savage $2,000.00. Hearing Officer Anne L. MacIntyre conducted a hearing in the case on August 12, 2004, and entered Findings of Fact, Conclusions of Law, and Recommended Order in favor of ETA. The School District filed a Notice of Exception to the Recommended Order. BOPA affirmed the Recommended Order with only minor revisions and issued a Final Order.

¶7 BOPA determined that "[t]he pre-employment incentive paid to Jeff Savage was additional compensation to him and a condition of employment," and, therefore, was a subject of mandatory bargaining. BOPA continued that "[b]y agreeing to pay the pre-employment incentive to Savage without bargaining with the Ekalaka Teachers' Association, the Ekalaka Unified Board of Trustees and Wade Northrop unilaterally changed Savage's compensation under the collective bargaining agreement, engaging in direct dealing with Savage." BOPA concluded that the School District had committed an unfair labor practice in violation of § 39-31-401(5), MCA.

¶8 The School District petitioned the District Court for judicial review on July 8,

3

2005.  The District Court affirmed the Final Order, and this appeal followed.

**STANDARD OF REVIEW**

¶9    We review an agency's conclusions of law to determine if they are correct.  *Hofer v. Montana DPHHS*, 2005 MT 302, ¶ 14, 329 Mont. 368, ¶ 14, 124 P.3d 1098, ¶ 14.  We review agency findings to determine whether they are clearly erroneous.  Section 2-4-704(2), MCA.  The same standard of review applies to "both the District Court's review of the administrative decision and our subsequent review of the District Court's decision."  *Hofer*, ¶ 14.

**DISCUSSION**

¶10    The Public Employees Collective Bargaining Act, §§ 39-31-101 through 505, MCA, imposes a duty on Montana public employers to bargain collectively, and in good faith, with their employees on the subjects of "wages, hours, fringe benefits, and other conditions of employment . . . ."  Section 39-31-305, MCA.  An employer who "refuse[s] to bargain collectively in good faith" commits an "unfair labor practice."  Section 39-31-401(5), MCA.

¶11    The obligation to bargain collectively extends only to the terms and conditions of employment of current employees, and does not extend to the terms and conditions of employment conferred on non-employees.  *Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 164 (1971); *see also Star Tribune*, 295 N.L.R.B. 543, 547, 131 L.R.R.M. 1404, 1408 (1989) (holding that the terms and conditions placed on applicants are not subjects of mandatory bargaining).  The terms and conditions offered

4

by an employer to non-employees still may be subject to mandatory bargaining, however, if they "vitally affect" the terms and conditions of employment for those employees currently working for the employer. *Pittsburgh Plate Glass Co.*, 404 U.S. at 179; *Monterey Newspapers, Inc.*, 334 N.L.R.B. 1019, 1020, 168 L.R.R.M. 1001, 1002 (2001) (noting that wage rates offered to job applicants "vitally affected" current employees and are mandatory subjects of bargaining).

¶12 It is undisputed that Savage was not an "employee" at the time the School District made the $2,000.00 payment to Savage. Thus, we must decide whether the $2,000.00 payment "vitally affected" the terms and conditions of employment of ETA's members. A condition or benefit conferred on a non-employee "vitally affects" the active employees if it "materially or significantly affects unit employees' terms and conditions of employment." *Star Tribune*, 295 N.L.R.B. at 547, 131 L.R.R.M. at 1409. An indirect or incidental impact on unit employees, to the contrary, is not sufficient to establish a condition or benefit as a subject of mandatory bargaining. *Star Tribune*, 295 N.L.R.B. at 547, 131 L.R.R.M. at 1409.

¶13 BOPA held that the reasoning in *St. Vincent Hospital*, 2004 WL 1804091 (N.L.R.B. Div. of Judges) (2004), controls the outcome of this case. In *St. Vincent Hospital* the employer unilaterally instituted a bonus program intended to attract nurses to apply for hard to fill nursing positions. *St. Vincent Hospital*. The employer structured the bonus program so that the bonus payments would be paid in increments over the first three years of the applicant's employment. *St. Vincent Hospital*.

¶14 The National Labor Relations Board (NLRB) determined that "[a]lthough applicants are not 'employees' . . . the sign-on . . . bonuses paid to the applicants, when they become employees, are wages." *St. Vincent Hospital*. The NLRB continued that the employer was "required to bargain regarding the . . . bonuses" because "the subject of new hire wages 'materially or significantly affects unit 'employees' terms and conditions of employment.'" *St. Vincent Hospital*.

¶15 We agree with BOPA that the payment to Savage should have been a subject of mandatory bargaining because the payment represents wages that "'materially or significantly affect[] unit 'employees' terms and conditions of employment'" *See St. Vincent Hospital*. The $2,000.00 payment to Savage is analogous to the bonuses paid in *St. Vincent Hospital*. In both cases the employer offered the payments to the applicants because the bargained-for salaries likely would have been insufficient to insure that the applicants would accept the job. *St. Vincent Hospital*.

¶16 The School District seeks to distinguish the payment to Savage from the bonuses in *St. Vincent Hospital*. The School District argues that the $2,000.00 that Northrop paid to Savage cannot be considered "wages" because Northrop gave the check to Savage before Savage had signed his employment contract. By contrast, the hospital paid the bonuses in *St. Vincent Hospital* after the applicants became employees. This distinction, contends the school district, makes it easier to characterize the nurses bonuses as "wages."

¶17    The School District misplaces its focus on the timing and labeling of the payment. ETA's bargaining interest in the $2,000.00 payment to Savage derives from its larger interest in establishing a stable wage structure through the process of collective bargaining. *See Pittsburgh Plate Glass Co.*, 404 U.S. at 178. The School District circumvented the collective bargaining process when it bargained directly with Savage and agreed to pay him compensation beyond that agreed by ETA. The unfair labor practice occurred the moment the School District agreed to pay Savage the $2,000.00 without bargaining with ETA. The School District's subsequent decision to issue a check to Savage before, at the time of, or after, Savage had signed his employment contract is irrelevant to our determination of whether the School District committed an unfair labor practice.

¶18    The School District asserts next that BOPA erred in concluding the $2,000.00 materially or significantly affected current employees because "[t]he record is completely devoid of any evidence establishing that the payment to Savage was made in connection with a tentative offer of employment." The School District appears to argue that it gifted the $2,000.00 to Savage in order to encourage his good will toward the School District, thereby making him more amenable to any future offers the School District might make.

¶19    We agree with BOPA's conclusion that "it is inherently incredible that Northrop agreed to give $2,000.00 . . . to an applicant for employment without some understanding . . . that he would actually come to work for the districts." The School District admits that Northrop paid Savage $2,000.00 after Savage had interviewed for the position, after

7

the School District had decided that "Savage was the best candidate for the position," and after Northrop had informed Savage of the salary and benefits associated with the position. These facts are sufficient to support BOPA's conclusion that the $2,000.00 related to an offer of employment.

¶20 Roberts's testimony also supports BOPA's conclusion that the School District provided the $2,000.00 to Savage in connection with a tentative offer of employment. Roberts testified that Northrop made her a tentative offer of employment before the Board of Trustees gave any official approval. Roberts also testified that she asked for a reimbursement of moving expenses from Northrop, but he declined her request on the ground that he could not pay her more than the salary provided for in the collective bargaining agreement. BOPA reasonably inferred from this testimony that Northrop made a similar tentative offer of employment to Savage and that Northrop had included compensation that went beyond the salary provided in the CBA.

¶21 Finally, the School District points out that, in affirming BOPA's legal conclusions, the District Court appears to hold that the School District violated the CBA between ETA and the School District. In light of this holding, the School District argues that the District Court should have dismissed this case because ETA had failed to "pursue the mandatory grievance procedure set forth in the CBA."

¶22 We agree with ETA that the School District bases its argument on a single "inapt phrase" near the end of the District Court's Decision and Order. The District Court correctly affirmed BOPA's conclusions of law, noting that the $2,000.00 payment to

8

Savage "vitally affected" the terms and conditions of ETA members' employment. Any conclusion that the District Court may have made regarding the CBA agreement constitutes harmless error. *Hall v. State*, 2006 MT 37, ¶ 21, 331 Mont. 171, ¶ 21, 130 P.3d 601, ¶ 21.

¶23 Affirmed.

/S/ BRIAN MORRIS


We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ JIM RICE