DA 06-0667

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 192

IN THE MATTER OF THE PROTESTS TO
THE APPLICATION FOR TRANSFER OF
OWNERSHIP AND LOCATION OF MONTANA
ALL-ALCOHOLIC BEVERAGES LICENSE NO.
02-401-1287-001, JACKRABBIT RED'S CASINO,
3715-31ST STREET S.W., GREAT FALLS,
CASCADE COUNTY, MONTANA-CAUSE NO: 05-029-LQ.

APPEAL FROM:     District Court of the Eighth Judicial District,
                 In and For the County of Cascade, Cause No. BDV 05-923
                 Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

            For Appellants:

            Jason L. Harkins, Harkins Law Firm, PC, Billings, Montana

            For Respondents:

            Michael G. Garrity,  Garrity, Avignone & Banick, Bozeman, Montana

            Keith A. Jones, Special Assistant Attorney General, Department of
            Revenue, Helena, Montana

                                        Submitted on Briefs:  July 3, 2007

                                                Decided:  August 8, 2007

Filed:

            _____
                                Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Citizens of Great Falls, Montana (Protestors), appeal from an order of the Montana Eighth Judicial District Court, Cascade County, affirming a decision of the Montana Department of Revenue (Department) to approve an application for the transfer of ownership and location of an all-alcoholic beverages license to Hare's Ear, Inc. (Hare's Ear), under the trade name of Jackrabbit Red's Casino located in the Flying J Travel Plaza (Flying J), in Great Falls, Cascade County, Montana. We affirm.

¶2 The issues on appeal are as follows:

1. Whether the Department is a proper party on appeal; and

2. Whether the District Court erred in affirming the Department's approval of Hare's Ear's application for transfer of ownership and location of the liquor license.

## BACKGROUND

¶3 Hare's Ear, a Montana close corporation, filed an application with the Department for the transfer of ownership and location of All-Alcoholic Beverages License No. 02-401-1287-001. Hare's Ear planned to obtain the license, formerly in public use at the Plum Crazy Casino in Great Falls, Montana, and use it at a Jackrabbit Red's Casino to be located on the premises of the Flying J in Great Falls, situated next to Interstate 15 at the 31st Street Southwest interchange. The lease for the bar and casino space between Hare's Ear and Flying J was contingent on Hare's Ear obtaining the liquor license, and, subsequently, gambling machine permits.

¶4 The Department published a notice that Hare's Ear had applied for transfer of ownership and location of the license to Jackrabbit Red's Casino at the Flying J location.

2

The Department received eighty-three letters of protest to the issuance of the license. Many of them were residents of the Gore Hill area in Great Falls, a subdivision located approximately a half mile south of the Flying J. The Department held a hearing where both sides presented witness testimony and exhibits. Because the intended use of the property was as a casino, and a liquor license is a prerequisite to obtaining gambling permits, much of the testimony from the protestors consisted of objections to gambling and its implications on the health and welfare of society. At the hearing, the Protestors argued that gambling would bring undesirable people into the community, and create a gambling addiction in the Gore Hill neighborhood. Several residents of the Gore Hill area voiced their concern about heavy traffic, impaired drivers, the safety of children bicycling or walking to the truck stop, negatively impacted real estate values, the area being off regular police beats, zoning restrictions, and little or no evidence of demand. Some Protestors were opposed to gambling in general because of the toll they had seen compulsive gambling take on themselves or others they knew. A psychotherapist and a clinical psychologist testified about the negative impact gambling presents to the health and welfare of society. A medical doctor with familiarity of gambling addiction testified that, while not opposed to gambling, she supported creating zoning districts to confine gambling to specified areas so that gambling addicts could be counseled to avoid those areas. The Department issued its decision, which included findings of fact, conclusions of law, order, and opinion, approving the application for the transfer of ownership and location of the license.

¶5 The Protestors appealed to the District Court pursuant to the Montana Administrative Procedure Act (MAPA). The Department appeared in the appeal to the District Court and participated in briefing. A hearing was held where for the first time, the Protestors objected to the Department being included as a party. The court allowed the Department to argue at the hearing in support of its decision to issue the license. The District Court affirmed the Department's decision. The Protestors appeal.

## STANDARD OF REVIEW

¶6 The standard of review of an administrative decision under MAPA applies to both the District Court's review of the administrative decision and this Court's subsequent review of the District Court's decision. *Hofer v. Montana DPHHS,* 2005 MT 302, ¶ 14, 329 Mont. 368, ¶ 14, 124 P.3d 1098, ¶ 14. The applicable standard of review is as follows:

> The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
>     (a) the administrative findings, inferences, conclusions, or decisions are:
>     . . .
>     (v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
>     (vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion . . . .

Section 2-4-704(2), MCA. A finding is clearly erroneous if a review of the record shows the findings are not supported by substantial evidence, the trier of fact misapprehended the effect of the evidence, or if a review of the record leaves the Court with the definite

4

and firm conviction that a mistake has been committed. *Munn v. Montana Bd. of Medical Examiners*, 2005 MT 303, ¶ 15, 329 Mont. 401, ¶ 15, 124 P.3d 1123, ¶ 15 (citations omitted). We review a District Court's conclusions of law by determining whether the District Court correctly interpreted the law. *Munn*, ¶ 15 (citations omitted).

## DISCUSSION

¶7 **ISSUE 1: Was the Department a proper party on appeal?**

¶8 The Protestors filed a petition for review of the Department's order allowing the transfer of the license to Hare's Ear. The Department appeared in the action by filing a motion to set a briefing schedule and a brief in opposition to the petition, defending its decision to issue a license. The Protestors filed a reply, but did not object to the Department's presence as a party until the hearing before the District Court. After listening to the objection, the District Court allowed the Department to present its argument on the merits. The Protestors again argue on appeal to this Court that the Department was not a proper party to the action in District Court.

¶9 The District Court's review of the Department's decision was confined to the record, as required by § 2-4-704(1), MCA. Hare's Ear and the Department made similar arguments opposing the petition for review to the District Court and on appeal to this Court. Even assuming arguendo that the Department was not a proper party to this action, since the District Court could have come to the same conclusion based solely on Hare's Ear's arguments and on its thorough review of the record, any reliance by the District Court on the Department's arguments constitutes harmless error. M. R. Civ. P.

5

61; s*ee Ekalaka Un. Bd. of Trus. v. Ekalaka Teach.*, 2006 MT 337, ¶ 22, 335 Mont. 149, ¶ 22, 149 P.3d 902, ¶ 22.

¶10 **ISSUE 2: Did the District Court err in affirming the Department's approval of Hare's Ear's application for transfer of ownership and location of the liquor license?**

¶11 An applicant seeking a liquor license must apply to the Department, and following an investigation carried out by the Montana Department of Justice, the Department of Revenue must determine whether the applicant is qualified to receive a license, the premises are suitable for the business, and that all laws and regulations are complied with. Section 16-4-402(1) and (2)(a), MCA. Before issuing the license, the Department must publish a notice of the license application in a newspaper of general circulation. Section 16-4-207, MCA. If the Department receives a certain number of written protests, the Department must hold a public hearing to determine whether the applicant is qualified and whether the application satisfies the requirements for public convenience and necessity. Section 16-4-207(3) and (4)(b), MCA. Section 16-4-405, MCA, provides that the Department has grounds to deny an application for a liquor license if any of the following criteria are met: (1) if the premises proposed for licensing are off regular police beats and cannot be properly policed by local authorities; (2) city or county zoning ordinances prohibit a license from being issued at the proposed premises; (3) the welfare of the people residing in the vicinity of the premises will be adversely and seriously affected; (4) there is not a public convenience and necessity justification; (5) a possible

6

reason for denial listed in a conditional approval letter has been verified; or (6) the purposes of the licensing code would not be carried out if a license were issued.

¶12 In this case, the Department published a notice that Hare's Ear had applied for transfer of ownership and location of the liquor license. The Department received eighty-three letters of protest to the proposed transfer, a sufficient number to necessitate a hearing for the determination of public convenience and necessity. The Department therefore held a hearing in Great Falls, as required by § 16-4-207, MCA. The Department considered each component of public convenience and necessity and found that Hare's Ear met the criteria.

¶13 The Department also looked at the other disqualifying factors under § 16-4-405, MCA. Based on the evidence offered at the hearing, it found that the proposed premises was not off regular police beats, was not situated in a zoned area where the sale of alcoholic beverages is prohibited by ordinance, residents or other retail licensees located in the vicinity would not be adversely and seriously affected, the applicant and premises complied with eligibility or suitability criteria provided by code, and that the purposes of the licensing code would be carried out if a license was issued. The Department considered these factors, weighed the evidence, and then made a determination that the liquor license should be issued because all laws were complied with and there was no reason to deny the license. The Department noted that there was nothing unique about the specific location that presented a dangerous, inappropriate, or otherwise unsuitable situation. Further, it noted that the policy arguments that the Protesters made with regard

7

to gambling would be more appropriately brought up in the legislature and with the city or zoning commission.

¶14 The Protestors are appealing the Department's conclusion that transferring the liquor license to Hare's Ear would not adversely or seriously affect the welfare of residents in the vicinity. They contend that the transfer of the liquor license, which would then lead to the issuance of gambling machine permits, would indeed adversely and seriously affect the welfare of Gore Hill residents. They argue that the Department misapprehended the effect of the evidence provided by the residents, a clinical psychologist, psychiatrist, and medical doctor that gambling is bad for a community. The Protestors urge this Court that the transfer of the liquor license should not have been approved.

¶15 The Protestors' arguments in opposition to the liquor license and gambling raise very broad policy-type concerns. They argue that gambling can be addictive and lead to criminal behavior for some individuals, gambling should not be legal, or gambling should be restricted to certain areas of Great Falls. As the Department indicated, these arguments are better left to the legislature, which has chosen to legalize gambling. The most specific objection to the Jackrabbit Red's Casino was that, given its very busy, visible location, it would draw people in and the residents of Gore Hill, when driving by, would encounter dazed gamblers. Nonetheless, the Protestors failed to provide substantial evidence that demonstrated how Jackrabbit Red's Casino, located at least a half mile from the nearest home, would adversely affect the residents in the vicinity.

¶16 A review of the record shows that there is substantial evidence to support the Department's findings and that it did not misapprehend the effect of the evidence. Further, we are not left with a definite or firm conviction that a mistake has been committed. Hare's Ear and the Department have demonstrated compliance with all laws with regard to the transfer of the liquor license, and there is no substantial evidence that would require that the Department deny the license.

¶17 We affirm the judgment of the District Court affirming the Department's approval of Hare's Ear's application for transfer of ownership and location of Montana All-Alcoholic Beverages License No. 02-401-1287-001.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE

Justice Jim Rice specially concurring.

¶18 I concur with the Court's opinion.

¶19 The District Court concluded that although the Protestors' generalized anti-gaming arguments "certainly are something to consider, they do not rise to the level of proof that's required under [§ 16-4-405(3)(a), MCA]." I agree with the District Court's statement.

9

¶20    In choosing to legalize and regulate gaming, the Legislature was aware of the potential adverse consequences of the activity, and enacted legislation requiring Department review and approval prior to the opening of gaming establishments. Evidence of generalized gaming concerns is relevant in these proceedings and, depending on the proposed site of a gaming establishment, could be sufficient to prove a serious adverse impact upon "the welfare of the people residing . . . in the vicinity." Section 16-4-405(3)(a), MCA. An example may be an attempt to locate an establishment directly adjacent to a school, hospital or church, the impacts upon which may be fairly self-evident. However, in the more typical case, as here, such generalized proof will be insufficient without evidence of adverse impacts specific to the vicinity of the proposed location. Here, such evidence was insufficient, the evidence in support of the application was substantial, and the Department's determination was appropriately entered.

¶21    Lastly, a significant portion of the Protestors' briefing is dedicated to discussing the anti-gaming remarks made during the 1972 Constitutional Convention for the purpose of demonstrating that generalized gaming concerns are sufficient, in and of themselves, to prevail herein. However, despite the individual remarks made at the Convention, the delegates ultimately granted the Legislature, in Article III, Section 9, clear authority to legalize forms of gambling. The Legislature has done so by way of the statutory provisions at issue herein, and the Court has correctly applied them.

/S/ JIM RICE