**FILED**

April 26 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 10-0496

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 88

TIM FELLOWS, SCOTT CUNNINGHAM,
JAMES DAY, BETH DORAN, et al.,

        Petitioners and Appellants,

   v.

DEPARTMENT OF ADMINISTRATION,
HUMAN RESOURCES DIVISION, STATE OF
MONTANA, BOARD OF PERSONNEL APPEALS,

        Respondents and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis & Clark, Cause No. BDV 2009-1144
                    Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

        Carter N. Picotte, Attorney at Law, Helena, Montana

        For Appellee:

        Marjorie L. Thomas and Michael P. Manion, Special Assistants Attorney
        General, Department of Administration, Helena, Montana

                            Submitted on Briefs:   March 29, 2011
                                   Decided:   April 26, 2011

Filed:

               _____
                             Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Appellants, thirty Civil Engineering Technicians employed by the State Department of Transportation ("DOT"), appeal an order of the First Judicial District Court, Lewis and Clark County, denying their petition for judicial review. We affirm.

¶2 This case involves the State of Montana's broadband pay system, which establishes employee classification and compensation. Sections 2-18-201 to -306, MCA. The pay plan must be administered "on the basis of competency, internal equity, and competitiveness to external labor markets when fiscally able." Section 2-18-301(4), MCA. Essentially, all positions are classified into "occupations" and are then assigned to one of nine "pay bands." Sections 2-18-201 to -306, MCA. There are many different occupations and salaries within each pay band. Section 2-18-101(16), MCA.

¶3 Nearly ten years ago, Appellants, all Civil Engineering Technician IV employees ("Technician IVs") sought reclassification of their positions. They sought the same classification and pay as Civil Engineering Specialist III employees ("Specialist IIIs"). Technician IVs were in pay band five, while Specialist IIIs were in pay band six. The State Human Resources Division ("SHRD") determined the Technician IVs were correctly classified as pay band five. DOT also requested an independent classification of the Specialist IIIs, which resulted in Specialist IIIs being moved from pay band six to pay band five. Technician IVs and Specialist IIIs have the same predominant duties, meaning they do the same work more than 50 percent of the time. However, when Specialist IIIs were moved to pay band five, DOT did not change the Specialist III's rate of pay, which is higher than

2

Technician IV's. The Technician IVs objected, saying they should be paid the same as Specialist IIIs because they have the same predominant duties.

¶4 A hearing was held before a Board of Personnel Appeals ("BOPA") Hearing Officer on May 7 and 8, 2009. The Hearing Officer issued a proposed order, finding that the difference in pay between Technician IVs and Specialist IIIs was "justified by the differing qualifications and earning power of the two occupations involved" and was "well within the scope of [DOT's] authority to make pay decisions." The Technician IVs appealed to the full board of the BOPA. A hearing was held by the full board, and it issued its final order on January 27, 2010, adopting the proposed order of the hearings officer. The Technician IVs then appealed to the District Court.

¶5 The District Court found that the Technician IVs and Specialist IIIs were not required to receive equal pay. It found, pursuant to § 2-18-301(4), MCA, the State's pay plan "must be administered 'on the basis of competency, internal equity, and competitiveness to external labor markets.'" The District Court found that, because civil engineers (such as Specialist IIIs) have more extensive formal education and greater advancement opportunities than engineering technicians (such as Technician IVs), and the civil engineers are more competitive in external labor markets, the wage disparity was permissible. The District Court rejected the Technician IVs' argument that the *Davis*[1] decision applied to this case because of the reenactment doctrine. *See Hovey v. Department of Revenue, Liquor Division*,

[1] *Walter Davis, et al*, Step Two Wage Appeal Response, CA5-2003 (G-197).

203 Mont. 27, 33, 659 P.2d 280, 283-84 (1983) (discussing the reenactment doctrine). It is from this order that the Technician IVs appeal.

## STANDARD OF REVIEW

¶6    The district courts review administrative decisions to determine whether the findings are clearly erroneous and whether the agency correctly interpreted the law. *O'Neill v. Department of Revenue*, 2002 MT 130, ¶ 10, 310 Mont. 148, 49 P.3d 43. We employ the same standard when reviewing the district court's order. *Id*.

¶7    The Montana Administrative Procedures Act provides:

> (2)  The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
> (a)  the administrative findings, inferences, conclusions, or decisions are:
>     (i)   in violation of constitutional or statutory provisions;
>     (ii)  in excess of the statutory authority of the agency;
>     (iii) made upon unlawful procedure;
>     (iv)  affected by other error of law;
>     (v)   clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
>     (vi)  arbitrary or capricious or characterized by abuse of discretion clearly unwarranted exercise of discretion; or
> (b)  findings of fact, upon issues essential to the decision, were not made although requested.

Section 2-4-704(2), MCA; *Weitz v. Montana Department of Natural Resources and Conservation*, 284 Mont. 130, 133, 943 P.2d 990, 992 (1997).

¶8    When reviewing the findings of a district court sitting without a jury, we apply the following three part test to determine whether the district court's findings are clearly

4

erroneous: 1) the record is reviewed to see if the findings are supported by substantial evidence; 2) if the findings are supported by substantial evidence, we determine if the district court misapprehended the effect of the evidence; and 3) if substantial evidence exists and the effect of the evidence was not misapprehended, we may still decide a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves us with the definite and firm conviction that a mistake was made. *Weitz*, 284 Mont. at 133-34, 943 P.2d at 992. We review conclusions of law to determine whether the agency's interpretation of the law is correct. *Id*.

## DISCUSSION

¶9 The Technician IVs argue that they "are paid considerably less money for doing the same work in the same place for the same employer" as the Specialist IIIs, and thus should be paid the same as Specialist IIIs. They also argue that the *Davis* decision applies here, and that the District Court erred by refusing to apply the "reenactment doctrine."

¶10 The Appellees argue they have correctly applied the enabling statutes and regulations regarding classification and pay, and that Specialist IIIs earn more because their position requires different knowledge, skills, and abilities. Further, they argue the *Davis* decision has been complied with and that the "reenactment doctrine" does not apply.

¶11 After reviewing the record, we find that substantial evidence supports the District Court's decision, the District Court did not misapprehend the effect of the evidence and did not make a mistake. All parties agree that Technician IVs and Specialist IIIs have the same predominant duties – work done more than 50 percent of the time. However, the non-

5

predominant duties are different. Specialist IIIs' most complex aspect involves advanced analysis of interrelated engineering issues, site features, engineering standards and specifications, and applicable regulations and requirements to ensure professional standards. Technician IVs' most complex aspect is independently directing multiple aspects of small and large construction projects at different locations.

¶12 The educational requirements for the two positions are also different. Specialist IIIs must have a bachelor's degree in civil engineering or a related engineering degree. Technician IVs require a high school diploma or GED with course work in algebra, geometry, or trigonometry.

¶13 The minimum professional experience for the two positions is different as well. To become a Specialist III, the employee must, at minimum, be certified as an engineer intern, which requires an engineering degree, or related science degree with four or more years of progressive experience on engineering projects satisfactory to the Board of Professional Engineer and Professional Land Surveyors, among several other requirements. To become a Technician IV, the employee must have at least eight years of engineering technician experience, two of which must be attained at the Technician III position. Certain amounts of education can substitute for some or all of the eight years.

¶14 There are also differing market demands for each position. Specialist IIIs are in higher demand. In national markets, Specialist IIIs are paid more. DOT also has a retention problem with Specialist IIIs, whereas Technician IVs experience little turnover. Finally,

6

there are different career advancement opportunities for each position, with Specialist IIIs having more options within DOT and the private sector.

¶15 We agree with the District Court that these differences allow for differing pay. We also note that the pay of Technician IVs cannot exclusively be determined by DOT, but is subject to collective bargaining, whereas the pay of Specialist IIIs is not and may be determined by DOT. *See* § 39-31-103(9), MCA (engineer interns, which Specialist IIIs must be, are not public employees for collective bargaining purposes). Because of this, it is not clear from the record whether the change in pay sought by Technician IVs would comply with their collective bargaining agreement.

¶16 The District Court also correctly concluded that the *Davis* decision was followed, therefore the reenactment doctrine was not invoked. The *Davis* decision did not mandate equal pay for the employees in that case – Civil Engineering Specialist V and Engineering Project Coordinator V. It required the same market rate starting point, but specifically allowed for "use of other factors" to adjust pay for positions or groups of positions. That is precisely what happened in the present case – other factors, such as education, professional experience, and market demand, were used to determine pay.

## CONCLUSION

¶17 The District Court's findings are supported by substantial evidence, it did not misapprehend the effect of the evidence, and we are not convinced a mistake was made. The District Court's conclusions of law are correct. Affirmed.

7

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE