FILED

April 12 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0410

DA 15-0410

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 86

RONALD MASHEK, et al., COMPLIANCE SPECIALISTS,
DEPARTMENT OF HEALTH AND HUMAN SERVICES,
CHILD SUPPORT ENFORCEMENT DIVISION,

      Petitioners, Appellees, Cross-Appellants,

    v.

DEPARTMENT OF PUBLIC HEALTH AND
HUMAN SERVICES, STATE HUMAN RESOURCES
DIVISION, DEPARTMENT OF ADMINISTRATION,

      Respondents and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV-2014-468
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Amy D. Christensen, Christensen & Prezeau, PLLP; Helena, Montana

          Marjorie L. Thomas, Department of Administration; Helena, Montana

          Francis X. Clinch, Department of Public Health & Human Services;
          Helena, Montana

      For Appellees:

          Linda M. Deola, Morrison, Sherwood, Wilson & Deola, PLLP, Helena,
          Montana

          Submitted on Briefs:  March 16, 2016
                   Decided:  April 12, 2016

Filed:

_____
             Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The Department of Public Health and Human Services, Human Resources Division (the Department), appeals from an order entered by the First Judicial District Court, Lewis and Clark County, reversing the Board of Personnel Appeals and reentering the Hearing Officer's decision that awarded damages to the Plaintiffs. We reverse.

¶2 The Department raises five issues on appeal and the Plaintiffs raise two issues on cross-appeal, but we address only the following issue:

*Did the hearing officer and the District Court err in concluding the Broadband Pay Plan factors, set forth in § 2-18-301(4), MCA, constitute stand-alone requirements that preempt the collective bargaining process?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Plaintiffs are Compliance Specialists within the Child Support Enforcement Division of the Department. They constitute the majority of Compliance Specialists, Pay Band 6, employed by the State of Montana, and belong to MEA-MFT Local 4573, a bargaining unit of approximately 500 state employees. The collective bargaining agreements to which MEA-MFT Local 4573 and the State are parties have two-year terms, beginning on July 1st of odd years following the Legislative session, and ending two years later, on June 30th.

¶4 MEA-MFT Local 4573 negotiated collective bargaining agreements with the State that covered the 2007-2009, 2009-2011, and 2011-2013 contract years. In May 2011, while MEA-MFT Local 4573 was negotiating for the 2011-2013 contract period, Plaintiffs filed a complaint against the Department alleging Plaintiffs' pay was not "internally equitable" in comparison with Pay Band 6 Compliance Specialists in other

2

State agencies, in violation of § 2-18-301(4), MCA. Plaintiffs did not contend the collective bargaining agreements were otherwise invalid or unenforceable.

¶5 The District Court initially certified as a class those union and non-supervisory employees of the Department who are or were Pay Band 6 Compliance Specialists. However, the District Court subsequently dismissed the complaint without prejudice on the ground that Plaintiffs had failed to exhaust their administrative remedies by pursuing a grievance before the Board of Personnel Appeals (BOPA).

¶6 In July 2012, Plaintiffs filed a grievance with BOPA. BOPA assigned the matter to a Hearing Officer, who conducted a hearing in May 2013 and issued his Findings of Fact, Conclusions of Law, and Recommended Order in November 2013. The Recommended Order held Plaintiffs were aggrieved by receiving pay that was not internally equitable with other Pay Band 6 Compliance Specialists for the years 2007-2013, and awarded damages. Both parties submitted objections to the Recommended Order to BOPA. In June 2014, BOPA issued its Final Order rejecting the Recommended Order and dismissing the grievance. BOPA held that Plaintiffs had no independent right to internally equitable pay with other Pay Band 6 Compliance Specialists, but, instead, internal equity was a factor to be considered during the collective bargaining process. BOPA reasoned that because Plaintiffs had entered into valid collective bargaining agreements for each year covered by the Hearing Officer's Recommended Order, a disparity in pay between Plaintiffs and other Pay Band 6 Compliance Specialists provided no basis for an award of damages.

3

¶7     Plaintiffs appealed to the District Court for judicial review of BOPA's Final Order. The District Court vacated and reversed BOPA's Final Order, agreeing with the Hearing Officer's conclusions regarding Plaintiffs' right to pay that is internally equitable with other Pay Band 6 Compliance Specialists. The Department appeals.

## STANDARD OF REVIEW

¶8     We review an order from a district court acting in an appellate capacity to determine whether the district court reached the correct conclusions under the appropriate standards of review. *In re Transfer Terr. From Poplar Elem. Sch. Dist. No. 9 to Froid Elem. Sch. Dist. No. 65*, 2015 MT 278, ¶ 10, 381 Mont. 145, 364 P.3d 1222. An agency's conclusions of law will be upheld if the agency's interpretation of law is correct. *State Pers. Div. v. Dep't of Public Health and Human Servs.*, 2002 MT 46, ¶ 20, 308 Mont. 365, 43 P.3d 305.

## DISCUSSION

¶9     *Did the hearing officer and the District Court err in concluding the Broadband Pay Plan factors, set forth in § 2-18-301(4), MCA, constitute stand-alone requirements that preempt the collective bargaining process?*

¶10    We construe a statute by "reading and interpreting the statute as a whole, without isolating specific terms from the context in which they are used by the Legislature." *MC, Inc. v. Cascade City-County Bd. of Health*, 2015 MT 52, ¶ 14, 378 Mont. 267, 343 P.3d 1208 (citation and internal quotations omitted). "Statutory construction is a holistic endeavor and must account for the statute's text, language, structure and object." *MC*, ¶ 14 (citation and internal quotations omitted). "[T]his Court presumes the Legislature would not pass meaningless legislation and we must, as much as possible, harmonize

4

statutes relating to the same subject giving effect to each." *Wild v. Fregein Constr.*, 2003 MT 115, ¶ 20, 315 Mont. 425, 68 P.3d 855. We must also "read and construe each statute as a whole so as to avoid an absurd result and to give effect to the purpose of the statute." *MC*, ¶ 14 (citation and internal quotations omitted).

¶11 Section 2-18-301(4), MCA, provides "[t]he department shall administer the pay program established by the legislature on the basis of competency, internal equity, and competitiveness to the external labor market when fiscally able."[1] Based on this statute, Plaintiffs argue they have a free standing right, independent of their collective bargaining agreements, to pay that is internally equitable. The Department argues that internal equity is a goal achieved through collective bargaining, not an independent actionable right that preempts the function of collective bargaining conducted by each agency and its employees to negotiate wages. We agree with the Department.

¶12 The primary error in the analysis employed by the Hearing Officer and the District Court is the interpretation of "internal equity" in isolation from the context in which the term is used by the Legislature, running afoul of a basic principle of statutory construction. *MC*, ¶ 14. Regardless of what the phrase "internal equity" means, the conclusion that it serves as a stand-alone right ignores the rest of the statute's language. The preceding words "shall administer the pay program . . . *on the basis of*" mean that competency, internal equity, and competitiveness are the factors to be considered in administering the pay program. Merriam-Webster's Dictionary 102 (11th ed. 2003)

---

[1] Although this case implicates prior versions of the statute—2007, 2009, 2011, and 2013—we conduct our analysis under the current version because the minimal changes made to the statute from year to year have no effect on the analysis.

5

("Basis" means "something on which something else is established."). However, none of the factors are elevated above the others, thus indicating that competency, internal equity, and competiveness are factors to be weighed rather than comprising individual requirements. *See Fellows v. Dep't of Admin.*, 2011 MT 88, ¶ 16, 360 Mont. 167, 252 P.3d 196 (affirming District Court's conclusion that § 2-18-301(4), MCA, did not mandate equal pay but required that pay be set on the basis of competency, internal equity, and competitiveness.). This is supported by the subsequent language "when fiscally able," which allows the Legislature to consider financial constraints when administering the pay program.

¶13 The reason for the statute's flexible construct becomes obvious when the statute is read in conjunction with the other Broadband Pay statutes and the Collective Bargaining statutes. The Broadband Pay statutes contemplate the role that collective bargaining is to play in setting pay. *See* § 2-18-301(3), MCA ("Total funds required to implement the pay increases . . . may not be increased through collective bargaining over the amount appropriated by the legislature."); § 2-18-301(7), MCA ("The department may promulgate rules not inconsistent with the . . . collective bargaining statutes . . . ."); § 2-18-303(4)(b), MCA ("Methods of administration consistent with the purpose of this part . . . may be provided for in collective bargaining agreements."). The Collective Bargaining statutes mandate that the State and the union representative have a duty to bargain collectively and in good faith. Section 39-31-305(1), MCA; *see also* § 39-31-101, MCA ("[I]t is the policy of the state of Montana to encourage the practice and procedure of collective bargaining to arrive at friendly adjustment of all disputes

between public employers and their employees."). This duty expressly requires that the agency and union representative negotiate wages, hours, and fringe benefits. Section 39-31-305(2), MCA. In other words, an agency cannot set the pay of its employees without collective bargaining. *See Fellows*, ¶ 15.

¶14 Given that the Legislature has provided "[a]n agreement between the public employer and a labor organization must be valid and enforced under its terms when entered into in accordance with the provisions of this chapter . . . ," § 39-31-306(3), MCA, it would be absurd, *MC*, ¶ 14, to conclude the Legislature had intended the mandatory collective bargaining process to be undone or circumscribed because there was not equal or near equal pay across all agencies—a point to which we have previously alluded. *See Fellows*, ¶ 15 ("[I]t is not clear from the record whether the change in pay sought by [the plaintiffs] would comply with their collective bargaining agreement.").

¶15 Rather, the Legislature intended internal equity to be a primary bargaining point between those agencies and employees that are required to collectively bargain for wages, which "harmonize[s]" the Broadband Pay statutes with the Collective Bargaining statutes. *Wild*, ¶ 20. Thus, "internal equity" is a key factor in determining whether the agency bargained in good faith. This reading gives substance both to the Legislature's intent that the pay program be administered "on the basis of competency, internal equity, and competitiveness . . . ," § 2-18-301(4), MCA, and that "[a]n agreement between the public employer and a labor organization must be valid and enforced under its terms . . . ," § 39-31-306(3), MCA.

7

¶16 This understanding is amplified by recognition of the remedies that have been provided for union member employees dissatisfied with the collective bargaining process. Union members may file an unfair labor practice complaint against the State for failure to bargain in good faith. Section 39-31-401, MCA. Similarly, they can file an unfair labor practice complaint against the union if the union breaches its duty to bargain in good faith on the members' behalf. Section 39-31-402, MCA. Union members can also refuse to make concessions, request mediation, or refuse to ratify the collective bargaining agreement. Sections 39-31-305(2), 307, MCA.

¶17 In sum, the statutory factor of "internal equity" is not a stand-alone right that may be pursued independently and in preemption of the work of the collective bargaining process. Therefore, we vacate the District Court's Order and reinstate BOPA's Final Order.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON

8