No. 14886

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

MONTANA STATE BOARD OF PERSONNEL
APPEALS, HUGH V. LARSON,

                              Petitioners and Appellants,

    vs.

MONTANA DEPARTMENT OF HIGHWAY,
RON RICHARDS, DIRECTOR; MONTANA
HIGHWAY COMMISSION,

                              Respondents and Respondents.

Appeal from:  District Court of the Twelfth Judicial District,
              In and for the County of Hill
              Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

    For Appellants:

        Weber, Bosch, Kuhr, Dugdale, Warner & Martin, Havre,
          Montana
        John Warner argued, Havre, Montana

    For Respondents:

        Jack A. Holstrom argued, Highway Legal Dept., Helena,
          Montana

    For Amicus Curiae:

        James Gardner, Helena, Montana

                              Submitted:  February 28, 1980

                                Decided:  MAY 2 1980

Filed:  MAY 1980

_____
Thomas J. Kearney
                              Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Hugh Larson appeals from an order of the Hill County District Court which determined as a matter of law that substantial evidence did not support the Board of Personnel Appeal's finding that the Highway Department unfairly denied him promotion for the Conrad sectionman position. Larson also appeals the District Court order insofar as it denies payment of his attorney fees.

Larson's grievance concerns the failure of the Montana Highway Department (Department) to promote him to the position of sectionman for the Conrad area. The Conrad sectionman position was created in late summer or early fall of 1977 as a result of the 1977 Legislature's transfer of a section of highway between Dupuyer and Conrad to the responsibility of the Highway Department. The Chief of the Maintenance Bureau, Joseph Timmons, sent a personnel requisition for the new position to the Administrator of Maintenance, Donald Gruel. Gruel in turn forwarded the requisition to LeRoy Broughton, the Personnel Director, who posted notice of the job opening on October 14, 1977.

Three men, Hugh Larson, Leonard Nygaard, and Chester Sanders applied for the position. Nygaard did not properly follow the application procedures and was not seriously considered. Chester Sanders, the brother-in-law of Personnel Director Broughton, did not have as much seniority or experience operating highway equipment as Larson. However, Larson was involved in three incidents of questionable conduct which reflected on his reliability as an employee.

Two or three summers prior to the hearing before the examiner, Larson, and two other employees went to Big

Sandy during lunch for some beer. Their work striping the highways that afternoon was highly erratic.

The second incident occurred in September 1972 at Browning, when Larson took a day off to go hunting. Although Larson testified that he received permission to be away from work, there was other testimony to the effect that Larson's immediate supervisor received no notice that Larson would be gone and that Larson's absence caused a delay in striping the highway.

The final incident occurred at Chinook when the paint machine operated improperly and blew paint over the road. Larson made numerous attempts to get the machine to operate properly, but each additional effort resulted in an erratic spraying of paint on the highway.

Sanders, on the other hand, has no record of misconduct in his personnel file. Two of Sanders' fellow employees testified at the hearing on Larson's grievance that Sanders drank on the job and that on one occasion he fell asleep while operating a piece of highway machinery. However, no report of this misconduct was ever given to management.

On November 2, 1977, five days after the closing of bids for the opening, Donald Gruel selected Sanders for the new position. About two weeks later, Larson filed a grievance protesting the Department's selection of Sanders as the new sectionman. The Board of Personnel Appeals ("BPA") conducted an investigation of the matters stated in the grievance, and on February 22, 1978, the hearings examiner conducted a hearing on the matter. The examiner issued a recommended order in which he found that hiring of new Department employees was governed by Article 7 of an agreement between the Department and the union (AFSCME) which

provided that ". . . [E]xperience, qualifications, capabilities, and length of service shall be factors for awarding advancements." He concluded that the "department was not acting in good faith in awarding the advancement to Mr. Sanders over Mr. Larson" and that "the department violated the contract between AFSCME and itself by not applying the mandated criteria in awarding advancements . . ." The examiner's recommended order awarded Larson with the sectionman position and backpay between his current rate of pay and that of a grade 13, step 1 from November 2, 1977, to the date the order is implemented.

The Highway Department filed exceptions to the examiner's recommended order. The BPA denied the exceptions and adopted the findings of fact, conclusions of law, and adopted the recommended order of the examiner as its final order.

The BPA and Larson petitioned the Hill County District Court for enforcement of the BPA's final order. The District Court, however, found that the record as a whole did not support the BPA's finding that the Department did not act in good faith and violated the terms of its agreement with the union, and that the order was invalid and unenforceable. Larson appeals the District Court's denial of enforcement of the BPA order. The BPA has filed an amicus curiae brief in support of Larson's appeal.

Larson and the BPA argue that the BPA has the authority to award the promotion to Larson if it finds Larson is more qualified for the opening because he has more seniority. The BPA found that the Department should have given greater weight to the applicants' seniority and that Larson was entitled to the promotion because he had more experience on road machinery and more seniority than Sanders. The Depart-

ment, however, is not required to favor senior employees for promotion.

The union contract governing the Department's promotion of its employees provides that advancements shall be made on the basis of the applicant's experience, qualifications, capabilities, and length of service. The contract does not require the Department to give greater weight to seniority than the other factors. Donald Gruel was aware that Larson had more seniority than the other applicants, but he relied heavily on the opinion of Joseph Timmons, the Chief of Maintenance. Although Timmons made no formal recommendation, he informed Gruel that he thought Sanders was a better man for the job than Larson.

The BPA placed greater weight on Larson's experience with road machinery than the Department. However, Larson's edge in experience in this category is somewhat misleading. Sanders also has had considerable experience at jobs above his present grade level, and in fact had over 300 hours experience operating complicated machinery. Furthermore, at the sectionman level, Sanders had 132 hours experience while Larson had none.

The BPA also found fault with the Department's assessment of Larson's misconduct and concluded that the Department judged the misconduct serious enough to exclude Larson from consideration for the opening. There is no evidence to support BPA's conclusion. Nor can we say the Department lacked the discretion to determine Sanders was the better man for the job because his work record indicated he was more reliable.

In sum, we conclude the BPA made an independent judgment as to which man was more qualified for the job rather

than determining whether the Department abused its discretion in selecting Sanders. The record as a whole supports the conclusion that the Department followed the contract guidelines for promotion of its employees.

Larson's second contention is that the Department's selection of Sanders was biased. The BPA in its conclusions of law stated that the Department did not act in good faith. It based this conclusion on its findings that Larson was more qualified for the job, and that the Department did not use experience, qualifications, capabilities, and length of service to award advancement. Along this line, it stated that Gruel was unusually vague in his testimony concerning Sanders' selection. The BPA found that Gruel had relied on Sanders' previous employment record, but that his employment record did not support this reliance. The BPA also found Gruel's failure to read a letter of recommendation submitted on behalf of Larson was suspicious.

The central point of the BPA's analysis is, however, contained in the following findings:

> "Where it is unrefuted by the highway department that the practice of promoting a man with more seniority to the section man position has always been followed and where there has been no justification for not following that past practice, the action of the highway becomes suspect. But where the brother-in-law of the administrator of the personnel division of the department of highways is the first individual to get a promotion over an employee with more seniority, the action becomes highly suspect."

Simply stated, the record does not support these findings. Rather than going into a detailed analysis of each of the circumstances discussed by the BPA, let it simply be said that there are no hard facts in support of the conclusion that nepotism occurred here. LeRoy Broughton is the brother-in-law of Sanders, but Broughton's position as

personnel administrator is purely a clerical position. He has no authority to award the advancement here. Furthermore, the BPA's conclusion that senior highway employees have always been preferred for promotions within the Department has no evidentiary foundation. The other circumstances raised by the BPA suggest that Gruel did not conduct a thorough investigation. Even assuming a less than thorough investigation, this fact does not by itself translate into bad faith conduct.

There must be more, and more is not shown in the record before us.

There is no need to discuss the issue of attorney fees in light of our decision upholding the District Court's decision reversing the Board of Personnel Appeals.

The judgment is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____
Justices

_____
Honorable L. C. Gulbrandson,
District Judge, sitting in place
of Mr. Justice Sheehy

Mr. Chief Justice Frank I. Haswell did not participate.