No. 92-573

# IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

---

ALENE BRACKMAN, RN, License No. RN 06169;
MARY MOUAT, RN, License No. RN 07358;
DEBBIE RUGGLES, RN, License No. RN 17406;
RUTH SASSER, RN, License No. RN 18738;
VERNA VanDYNHOVEN, RN, License No. RN 18699;
LYNN ZAVALNEY, RN, License No. RN 08577;

Petitioners and Respondents,

v.

BOARD OF NURSING, an Administrative Agency
of the Department of Commerce, State of Montana,

Respondent and Appellant.

FILED

MAY 6 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Robert J. Emmons; Emmons & Sullivan, Great
                Falls, Montana

        For Respondent:

                Gary L. Davis; Luxan & Murfitt, Helena, Montana

---

                        Submitted on Briefs:   April 1, 1993

                                  Decided:   May 6, 1993

Filed:

_____
                    Clerk

Chief Justice J.A. Turnage delivered the Opinion of the Court.

This is an appeal from an administrative action. The District Court for the First Judicial District, Lewis and Clark County, reversed the findings, conclusions, and order entered by the Board of Nursing and ordered that the recommended findings, conclusions, and order of the Board's hearing examiner be adopted instead. The Board appeals. We affirm.

The issues are:

1. Did the District Court err in ruling that the Board violated § 2-4-621, MCA, by receiving and considering the prosecuting attorney's proposed findings?

2. Did the court err in concluding that the Board's review of the hearing examiner's proposed findings was substantially impaired by the Board's rejection of the hearing examiner's opinion that Mary Mouat was more credible than Ellen Wirtz?

3. Did the court err in concluding that the Board was biased and prejudiced so that it could not objectively determine the discipline for the nurses upon remand?

4. Did the court err in holding that the Board's rejection of the hearing examiner's findings was erroneous, arbitrary and capricious, and an abuse of discretion?

At the time relevant to this action, the registered nurses who appear here as petitioners were employed by St. Peter's Hospital,

2

Helena, Montana, in its hospice program. As registered nurses practicing in Montana, their licenses were subject to regulation by the Board of Nursing. Title 37, Chapter 8, MCA.

In October 1990, Ellen Wirtz, a registered nurse who had resigned from the hospice program, filed a complaint with the Board charging that the hospice nurses were stockpiling painkilling medications, primarily morphine suppositories, received from families of deceased patients. It has not been alleged that the nurses were appropriating the drugs for their own personal use or personal gain. The drugs were stored in an unlocked desk drawer at the hospice office and were used when a nurse felt it would take too long to obtain a new prescription or to get a prescription filled for a hospice patient in need.

The complaint resulted in charges that the nurses' conduct was in violation of § 37-8-441(5), MCA, and § 8.32.413(2), ARM. In response to the filing of the complaint, the nurses signed statements admitting their conduct. However, in her statement, Mary Mouat, the supervisor of the hospice program nurses, pointed out that they had ceased the practice and that the hospice program had initiated a new procedure for obtaining drugs in emergency situations. A supply of narcotic drugs had been placed in the hospice office in a lockbox, the contents of which were periodically audited by a pharmacist.

On April 15, 16, and 17, 1991, a public hearing was held on the complaint, before a hearing examiner appointed by the Board. The Board was represented at the hearing by counsel who assumed the

3

role of prosecuting the complaint. The nurses were represented by privately-retained counsel. After the hearing, the nurses' attorneys submitted proposed findings of fact and conclusions of law and supporting briefs. The prosecuting attorney did not.

On April 30, the hearing examiner issued his findings of fact, conclusions of law, and a recommended order concluding that the substantive charges of unprofessional conduct were not proven and should be dismissed. He found that the nurses, with the exception of Verna VanDuynhoven, committed technical violations of law pertaining to record keeping and storage of narcotics. The hearing examiner recommended that all charges against VanDuynhoven be dismissed and that letters of reprimand be placed in the files of the other nurses for three years.

The Board met and agreed to individually review the transcripts of the hearing before the hearing examiner. Different counsel was brought in to advise the Board. The attorney who had prosecuted the complaint and was normally the Board's counsel appeared on behalf of the Department of Commerce, the administrative arm of the Board.

At a subsequent meeting made open to the public, the Board rejected the hearing examiner's findings of fact, conclusions of law, and recommended order. It later issued its own findings, conclusions, and order, based on objections and proposed findings and conclusions filed directly with the Board by the attorney who had prosecuted the complaint. The Board concluded that the nurses essentially committed every violation alleged in the complaint. It

4

placed the licenses of the nurses on probation for terms ranging from three to five years, with certain education and reporting requirements. The Board's order also prohibited the nurses from supervising other nurses during their probation.

The nurses petitioned for judicial review of the Board's final order. The parties submitted briefs to the District Court, which then held a hearing on the petition for judicial review. The court reversed the findings, conclusions and final order of the Board. It remanded the matter and ordered the Board to adopt the findings, conclusions, and recommended order of the hearing examiner in their entirety. The Board appeals.

I

1. Did the District Court err in ruling that the Board violated § 2-4-621, MCA, by receiving and considering the prosecuting attorney's proposed findings?

The District Court found that the Board acted improperly in receiving and considering the prosecuting attorney's proposed findings, conclusions, and order <u>after</u> the hearing examiner had submitted to the Board his findings, conclusions, and proposed order. The court found that, at that point in the proceedings, the parties were entitled to file only exceptions to the hearing examiner's decision. The court further found that

[b]y permitting [the prosecuting attorney] to file proposed findings after the hearing examiner had already issued his decision, the prosecuting arm of the Board was given an unfair advantage over the Nurses in the Board's review of the case. Moreover, by accepting and using [the prosecuting attorney's] proposed findings, the Board favored the prosecution and violated its neutrality which

5

it was required to maintain at that stage of the proceedings.

The Board claims that no reason has been shown why it was permissible to file proposed findings with the hearing examiner but not with the Board. It asserts that, under § 2-4-614(1)(e), MCA, proposed findings can be filed with the hearing examiner, the administrative agency, or both.

Section 2-4-614, MCA, provides:

(1) The record in a contested case shall include:
. . .
(e) proposed findings and exceptions[.]

Section 2-4-621, MCA, provides:

(1) When in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case, the decision, if adverse to a party to the proceeding other than the agency itself, may not be made until a proposal for decision is served upon the parties and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the officials who are to render the decision.
. . .
(3) The agency may adopt the proposal for decision as the agency's final order. The agency in its final order may reject or modify the conclusions of law and interpretation of administrative rules in the proposal for decision but may not reject or modify the findings of fact unless the agency first determines from a review of the complete record and states with particularity in the order that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law. The agency may accept or reduce the recommended penalty in a proposal for decision but may not increase it without a review of the complete record.

We agree with the District Court that § 2-4-614, MCA, merely describes the contents of the record in a contested case. It does

6

not provide that proposed findings may be filed at any point in an administrative proceeding.

Section 2-4-621, MCA, sets forth the procedure by which an agency may alter the findings and conclusions of its finder of fact. The Board did not comply with that statute. In allowing the prosecuting attorney to file findings, conclusions, and a proposed order after the hearing examiner's findings, conclusions, and proposed order had been filed, the Board went beyond its authority under § 2-4-621(1), MCA, to allow parties adversely affected to "file exceptions and present briefs and oral argument" in response to the proposed decision.

Further, the Board did not follow the procedure set forth in § 2-4-621(3), MCA, for modifying or rejecting the findings of its hearing examiner. In its deliberations, instead of focusing on whether the hearing examiner's findings were supported in the record, the Board focused on whether the prosecuting attorney's objections to the proposed findings were supported in the record. The Board then considered each of the prosecuting attorney's proposed findings, adopting them with minor modifications.

Notwithstanding the Board's position that the transcript demonstrates its reasons for rejecting the findings of the hearing examiner, § 2-4-621(3), MCA, requires that the agency's order state "with particularity" why such findings have been rejected. Instead of stating with particularity why each of the hearing examiner's findings was rejected, the Board's order stated only that the

7

findings, conclusions, and recommended order of the hearing examiner "are rejected in their entirety."

A hearing examiner, when one is used, is in the unique position of hearing and observing all testimony entered in the case. In the present case, none of the Board members heard the evidence "live;" they were limited to reviewing a cold record. The findings of the hearing examiner, especially as to witness credibility, are therefore entitled to great deference. This is reflected in the procedural requirements which must be met under § 2-4-621, MCA, before a hearing examiner's findings may be rejected or modified. The failure of the Board to meet those requirements in this case is clear.

The Board cites the provision of § 2-4-623(4), MCA, that "[i]f, in accordance with agency rules, a party submitted proposed findings of fact, the decision shall include a ruling upon each proposed finding." Because the prosecuting attorney's proposed findings were not submitted in accordance with the statutes governing proceedings before the Board as discussed above, this statute does not apply to his proposed findings. Therefore, there was no need for the Board to rule upon each of the prosecuting attorney's proposed findings.

We hold that the District Court did not err in ruling that the Board violated § 2-4-621, MCA, by receiving and considering the prosecuting attorney's proposed findings after the recommended findings, conclusions, and order of the hearing examiner were submitted.

8

Did the court err in concluding that the Board's review of the hearing examiner's proposed findings was substantially impaired by the Board's rejection of the hearing examiner's opinion that Mary Mouat was more credible than Ellen Wirtz?

At the hearing before the hearing examiner, the testimony of Ellen Wirtz, the former hospice nurse, conflicted in numerous respects with the testimony of Mary Mouat, the supervisor of the hospice nurses. The hearing examiner found that Wirtz's testimony was not credible. The District Court stated that the Board "failed to provide adequate grounds for rejecting the hearing examiner's determinations of credibility of Mary Mouat and Ellen Wirtz." As the District Court pointed out, the Board failed to determine whether there was substantial credible evidence to support two findings by the hearing examiner which provided specific examples of Wirtz's lack of credibility.

In objecting to the District Court's opinion on this issue, the Board relies upon the language of § 2-4-704(2), MCA, prohibiting a district court from substituting its judgment for "that of the agency as to the weight of the evidence on questions of fact." The Board asserts that this language prohibits not only the District Court, but also the hearing examiner, from making any judgment that is binding on the Board as to the weight of Wirtz's or Mouat's testimony.

The Board misinterprets § 2-4-704(2), MCA. This relates back to the use of a hearing examiner by an administrative agency as

9

discussed under Issue I. As stated under that issue, the credibility of a witness is best judged by one who has the opportunity to observe the demeanor of the witness in person. In this case, the hearing examiner definitely found that Mouat was a more credible witness than was Wirtz, and supported that finding. We have reviewed the record, as did the District Court. We hold that the District Court did not err in ruling that substantial credible evidence supports the findings of the hearing examiner concerning the credibility of Mouat and Wirtz.

The Board also argues that the District Court erred in stating that the hearing examiner's findings of fact and conclusions of law "were based in large part on the testimony and credibility of these two witnesses [Mouat and Wirtz]." Because the nurses admitted their conduct, a major focus of the hearing was the appropriate discipline to be imposed upon them. Whether they were being candid in their admissions was, of course, crucial to this determination. The primary challenge to the nurses' credibility was the testimony of Wirtz, and her testimony conflicted with Mouat's. We hold that the District Court did not err in ruling that the Board's review of the hearing examiner's proposed findings was substantially impaired by the Board's improper rejection of the hearing examiner's opinion as to the relative credibility of Mouat and Wirtz.

III

Did the court err in concluding that the Board was biased and prejudiced so that it could not objectively determine the discipline for the nurses upon remand?

10

The District Court found that the Board violated its neutrality and impartiality and had become "irreparably tainted." The Board claims, however, that there is no factual or legal basis for the court to divest it of its legal duty to determine the discipline for the nurses.

The Board's perhaps unintentional bias against the position taken by its hearing examiner and in favor of the position taken by the prosecuting attorney, who was usually the Board's attorney is demonstrated by the improper procedure used by the Board, as discussed above. The District Court's decision not to remand the action to the Board for determination of discipline is further supported by the need for final resolution of this matter. As evidence of absence of bias on its part, the Board points out that it now has several new members who did not consider this matter the last time it was before the Board. But the new Board members would require time to study the record before the Board could meet and enter an order. The nurses have been under the cloud of this litigation long enough.

We have ruled that the findings and conclusions of the hearing examiner are supported by substantial evidence. The discipline recommended by the hearing examiner and adopted by the District Court is commensurate with those findings and conclusions. The discipline is also commensurate with the Board's discipline rulings in other cases between 1986 and 1991, as summarized by the Board in a document in the record before the hearing examiner. We hold that

11

there was no error in the District Court's ruling that the hearing examiner's recommendations for discipline shall be adopted.

IV

Did the court err in holding that the Board's rejection of the hearing examiner's findings was erroneous, arbitrary and capricious, and an abuse of discretion?

The Board challenges several specific findings of the hearing examiner. It claims that the hearing examiner's finding that "the practice" was "stopped voluntarily" is error because Mouat was directed by her supervisor to see that "the practice" stopped. The Board points out the contrast between the drug destruction record indicating that 158 doses of drugs were destroyed on June 7, 1990, and the hearing examiner's finding that "not a large number of suppositories" were placed in Mary Mouat's desk drawer. We note that "the practice" ceased prior to the initiation of these proceedings. Further, it is unclear from the record whether all the drugs destroyed on June 7, 1990, had been stored in Mouat's desk drawer, or whether some had just been received by the hospice program. At any rate, we conclude that neither of these semantic uncertainties are critical, in light of the entire record.

The Board also disputes the finding that Mary Mouat was a credible witness. The Board cites evidence that Mouat had forged Ruth Sasser's signature on a drug destruction record and that Mouat told Sasser to use her own judgment about retaining drugs, after having been directed to stop the practice. It also cites Mouat's testimony that all of the nurses participated in "the practice,"

12

which conflicted with VanDuynhoven's statement that she knew of "the practice," but did not participate. Again, in the context of the entire record, we conclude that the evidence cited by the Board, some of which is disputed, is not fatal to the finding that Mouat was credible.

The Board cites the following omissions from the findings: Wirtz testified that Mouat never told her to cease "the practice;" the hearing examiner did not account for the source of all the drugs in Mouat's desk drawer; Sasser kept two morphine suppositories in her nursing bag after being told not to; Lynn Zavalney took drugs from the drawer to a patient on the basis of financial need, not medical emergency; Alene Brackman admitted she did not tell Dr. Simms she was filling a prescription from the drawer; and VanDuynhoven knew there were drugs in the drawer. While it is true there was evidence on all of these points, findings are not required to be made on every point on which evidence is produced. We conclude that none of these points constitute significant omissions from the findings.

The District Court examined each of the findings of the hearing examiner, one by one, as the Board should have done, and determined that each was supported by substantial credible evidence in the record. Therefore, the court concluded that under § 2-4-621(3), MCA, the hearing examiner's findings of fact should have been adopted by the Board.

Rejection of a hearing examiner's factual recommendations in violation of § 2-4-621(3), MCA, constitutes an abuse of discretion

13

within the meaning of § 2-4-704(2)(a)(vi), MCA. Brander v. Director, Dept. of Inst. (1991), 247 Mont. 302, 308, 806 P.2d 530, 533. In this case, the Board abused its discretion by rejecting the hearing examiner's findings without following the procedure required pursuant to § 2-4-621(3), MCA. We hold that the District Court did not err in holding that the Board's rejection of the hearing examiner's findings, conclusions, and proposed order constituted an abuse of discretion and violated § 2-4-704(2)(a)(vi), MCA.

Affirmed.

_____
Chief Justice

We concur:

_____
_____
_____
_____
_____
Justices

14

May 6, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Robert J. Emmons
EMMONS & SULLIVAN
608 Strain Bldg.
Great Falls, MT 59401

Gary L. Davis
LUXAN & MURFITT
P.O. Box 1144
Helena, MT 59624

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy