FILED

04/11/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0076

DA 16-0076

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 80

BLAINE COUNTY and HILL COUNTY,

       Petitioners, Appellees and Cross-Appellants,

   v.

SUMMER STRICKER, Personal Representative
of the Estate of ALLEN J. LONGSOLDIER, JR.,

       Respondent and Appellant, and Cross-Appellee,

   and

The MONTANA HUMAN RIGHTS COMMISSION,

       Respondent.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District,<br>In and For the County of Lewis And Clark, Cause No. BDV 13-574<br>Honorable Jeffrey M. Sherlock, Presiding Judge |

COUNSEL OF RECORD:

     For Appellant:

          Patrick F. Flaherty, Daniel J. Flaherty, Paul Gallardo, Attorneys at Law,
          Great Falls, Montana

          Steven T. Potts, Steven T. Potts, PLLC, Great Falls, Montana

     For Appellees:

          Maureen H. Lennnon, Gregory L. Bonilla, MACo Defense Services,
          Helena, Montana

          Mark F. Higgins, Ugrin, Alexander, Zadick & Higgins, P.C., Great Falls,
          Montana

For Respondent Montana Human Rights Commission:

Scott M. Stearns, Boone Karlberg, Missoula, Montana

Timothy Little, Special Assistant Attorney General, Department of Labor, Helena, Montana

Submitted on Briefs: February 15, 2017

Decided: April 11, 2017

Filed:

_____
                    Clerk

2

Justice Beth Baker delivered the Opinion of the Court.

¶1 Allen Longsoldier, Jr.—an eighteen-year-old Native American—died tragically from delirium tremens, a result of alcohol withdrawal, while in custody at the Hill County Detention Center following his arrest by Blaine County authorities. Longsoldier's Estate, represented by Summer Stricker, brought this case before the Montana Human Rights Bureau alleging that Hill County and Blaine County discriminated against Longsoldier on the basis of race and disability. The Hearing Officer concluded that the Counties had not discriminated against Longsoldier. The Estate appealed to the Human Rights Commission, which found clear error in the Hearing Officer's findings and concluded that the Counties had discriminated against Longsoldier.

¶2 The Counties petitioned the First Judicial District Court to review the Commission's final agency decision. Presiding Judge Jeffrey Sherlock reversed and vacated the Commission's decision and reinstated the Hearing Officer's order as the final agency decision. On the Estate's motion to alter or amend, Judge James Reynolds—who had assumed jurisdiction of the case following Judge Sherlock's retirement—concluded that Judge Sherlock had, as a matter of law, fashioned an improper remedy.

¶3 Both parties appeal, raising multiple issues. We find the following issues dispositive:

*1. Whether Judge Sherlock correctly concluded that the Commission improperly modified the Hearing Officer's findings.*

*2. Whether Judge Reynolds correctly concluded that Judge Sherlock erred as a matter of law by reinstating the Hearing Officer's decision as the final agency decision.*

3

¶4      We affirm Judge Sherlock's order and reverse Judge Reynolds's order.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5      Longsoldier was an intelligent and talented young man who struggled with alcoholism and depression. He excelled at basketball and was trying to get into college at the time of his death. His alcohol abuse resulted in a number of juvenile court proceedings, which led to supervision by a deputy juvenile probation officer.

¶6      In the fall of 2009, Longsoldier's probation officer tried to contact him in order to close his file. The probation officer was unable to get in touch with Longsoldier and eventually requested a "pick up and hold." A Blaine County sheriff's deputy arrested Longsoldier early on the morning of November 19, 2009. The deputy transported Longsoldier to the Hill County Detention Center, where Blaine County's adult prisoners are held pursuant to an agreement between the Counties.

¶7      Longsoldier had been drinking heavily for several days prior to his arrest. He had not, however, been drinking immediately before his arrest and showed no signs of intoxication when he was brought to the detention center. Longsoldier did not receive a medical screening when booked into the detention center, contrary to the detention center's admissions policy. The detention center's daily log book indicates that Longsoldier appeared to have no issues—aside from not sleeping—for the first twenty-four hours of his incarceration. At 3:28 a.m. on November 20, 2009, however, the log book indicates that Longsoldier complained that he could not hold down water and that he asked to go to the hospital. Shortly after that, a fellow inmate observed Longsoldier exhibit behavior that suggested he was hallucinating. Longsoldier's condition continued to deteriorate. Various

4

entries in the log book demonstrate that detention center officers recognized that Longsoldier was experiencing symptoms associated with "detoxing" or alcohol withdrawal. Witnesses testified that such symptoms are common among inmates who enter the detention center intoxicated and remain while their bodies process alcohol from their systems.

¶8 During the late afternoon of November 21, 2009, Longsoldier began pounding on the door of his cell and acting increasingly violent. By this point he had not slept for nearly three days. At around 7:00 that evening, Longsoldier was taken to Northern Montana Hospital by a Blaine County sheriff's deputy. A doctor examined him and gave him several medications. The doctor did not diagnose Longsoldier with alcohol withdrawal syndrome. Longsoldier's condition improved to the point that he could hold down water. The doctor ordered that Longsoldier be discharged with six Ativan tablets, prescribed for anxiety. The Hospital discharged Longsoldier with prescriptions for Cymbalta and Ativan, but did not provide the six Ativan tablets the doctor had ordered. The prescriptions were never filled. The daily log indicates that Longsoldier was back at the detention center around 9:00 p.m.

¶9 Longsoldier's condition worsened shortly after he returned to the detention center. The log book reveals that over the course of the next several hours officers observed Longsoldier hallucinating, talking to himself, gagging, dry heaving, sweating, and pleading for help. By around 2:30 a.m. on November 22, 2009, Longsoldier's condition had deteriorated so substantially that a detention center officer called Blaine County authorities and informed them that they may need to take Longsoldier back to the Hospital. The Blaine County dispatcher then called the Hospital and spoke with a nurse. The nurse told the

5

dispatcher that Longsoldier just needed to drink fluids and that he was "playing them." The nurse advised the dispatcher that Longsoldier was not physically ill and "just doesn't like being there." The Blaine County dispatcher relayed this information to the officer at the detention center, and told the officer that the Hospital said "there's nothing they could do for him."

¶10 The log book entries for the next several hours indicate that Longsoldier continued to suffer from hallucinations, talk to himself, not eat, and not drink any water. An entry at 10:44 p.m. indicates that Longsoldier was shivering and non-responsive. Shortly thereafter, a detention center officer called an ambulance. The ambulance picked up Longsoldier just before midnight on November 22. Longsoldier died at the Hospital from delirium tremens at approximately 2:00 a.m. on November 23, 2009.

¶11 In May 2010, the Estate filed a claim against the Counties and the Hospital with the Human Rights Bureau. The complaint alleged that the Counties and the Hospital discriminated against Longsoldier because of his race—Native American—and because of his disability—alcoholism. The Hospital settled with the Estate shortly before the contested case hearing. The Hearing Officer heard the claims against the Counties during a four-day hearing in September 2011. In April 2012, the Hearing Officer issued a thorough thirty-page decision. The Hearing Officer found:

> There is no evidence that [the Counties'] action or inactions, or the lack of either better information about alcohol withdrawal or any training or information about delirium tremens before November 2009, were the result of any discriminatory animus on the part of [the Counties] . . . toward either alcoholics or Native Americans.

6

The Hearing Officer concluded that the Counties did not illegally discriminate against Longsoldier due to his race or disability.

¶12 Longsoldier's Estate appealed the Hearing Officer's decision to the Commission. The Commission held a hearing in July 2012 but the hearing was not recorded due to technical difficulties. At a second hearing in September 2012, the Commission considered its draft order to remand the case to the Hearing Officer. The Commission approved the remand order. It concluded:

> [T]he hearing officer misapprehended the effect of the evidence regarding the failure of law enforcement personnel of Hill and Blaine Counties to have the prescriptions issued to Longsoldier by the [Northern Montana Hospital] treating physician on Saturday, November 21, 2009, filled and the failure of Detention Center personnel to administer those medications, as directed by the doctor.

The Commission found that the Counties' failure to fill the prescriptions "manifest[ed] a discriminatory indifference to Longsoldier's medical needs based on his disability." On that basis, the Commission determined that two of the Hearing Officer's findings of fact were "clearly erroneous" and modified those findings. Neither the Hearing Officer nor the Commission found racial discrimination, and the Estate does not contest that ruling. The Commission remanded to the Hearing Officer to determine the appropriate relief.

¶13 Upon remand, the Hearing Officer found the Counties liable to the Estate for $300,000 for the emotional distress Longsoldier suffered. All parties appealed the Hearing Officer's decision and the Commission conducted another hearing in July 2013. The Commission increased the award to $1,350,000 in its final agency decision.

7

¶14 The Counties filed a petition for judicial review with the District Court. Because the Counties' petition alleged a variety of procedural errors, Judge Sherlock allowed the parties to engage in discovery regarding the alleged errors. In his order, Judge Sherlock concluded that numerous procedural defects, including several that the Commission acknowledged, required reversal of the final agency decision. Of particular concern, Judge Sherlock determined that the Commission applied an incorrect standard of review to the Hearing Officer's decision. Based on his conclusion that the Hearing Officer's findings were supported by substantial evidence, and given the nature of the procedural errors, Judge Sherlock concluded that the appropriate remedy was to reinstate the Hearing Officer's decision as the final agency decision.

¶15 The Estate filed a M. R. Civ. P. 59 motion to alter or amend Judge Sherlock's order. While that motion was pending, the Estate filed a notice of appeal with this Court. Judge Reynolds then assumed jurisdiction of the case following Judge Sherlock's retirement. Judge Reynolds concluded that Judge Sherlock correctly determined that the procedural errors justified reversing the Commission's order. Judge Reynolds concluded, however, that Judge Sherlock committed "a manifest error of law" by reinstating the Hearing Officer's decision as the final agency decision. Judge Reynolds thus granted the Estate's motion to alter or amend and remanded to the Commission for further proceedings. The Estate appeals Judge Sherlock's order and the Counties cross-appeal Judge Reynolds's order.

**STANDARDS OF REVIEW**

¶16 The Montana Administrative Procedure Act (MAPA) governs actions brought before the Human Rights Commission. *Schmidt v. Cook*, 2005 MT 53, ¶ 20, 326 Mont. 202, 108 P.3d 511. The standard of judicial review of an agency decision under MAPA provides in pertinent part:

> (2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
>
> (a) the administrative findings, inferences, conclusions, or decisions are:
>
>> (i) in violation of constitutional or statutory provisions;
>>
>> (ii) in excess of the statutory authority of the agency;
>>
>> (iii) made upon unlawful procedure;
>>
>> (iv) affected by other error of law;
>>
>> (v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
>>
>> (vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Section 2-4-704(2), MCA; *Schmidt*, ¶ 20. This standard of review applies to both the District Court's review of the agency's decision and this Court's subsequent review of the District Court's decision. *In re Transfer of Ownership & Location of Mont. All-Alcoholic Bevs. License No. 02-401-1287-001*, 2007 MT 192, ¶ 6, 338 Mont. 363, 168 P.3d 68.

¶17 We generally review a district court's decision to grant or deny a motion to alter or amend for an abuse of discretion. *Arnone v. City of Bozeman*, 2016 MT 184, ¶ 4, 384 Mont.

9

250, 376 P.3d 786. Nevertheless, deference is not applied to a district court's conclusions of law, which are reviewed de novo to determine whether its interpretation of the law is correct. *Krutzfeldt Ranch, LLC v. Pinnacle Bank*, 2012 MT 15, ¶ 13, 363 Mont. 366, 272 P.3d 635.

**DISCUSSION**

¶18    *1. Whether Judge Sherlock correctly concluded that the Commission improperly modified the Hearing Officer's findings.*

¶19    Relying on *Schmidt* and § 2-4-621(3), MCA, Judge Sherlock noted that, when reviewing hearing officer decisions, the Commission applies a standard of review different from the standard a reviewing court applies to the Commission's decisions. He observed that the Commission's remand order cited to a case that set forth an inapplicable standard of review. This Court, Judge Sherlock declared, has determined "that a final agency order cannot modify a hearing officer's findings unless it reviews the <u>complete record</u> and states with particularity in the order that the findings were not based on competent substantial evidence." (Citing *State Personnel Div. v. Child Support Investigators*, 2002 MT 46, ¶ 25, 308 Mont. 365, 43 P.3d 305.) Judge Sherlock then determined that the Commission never made a finding that the Hearing Officer's findings it modified were not based on substantial competent evidence. Thus, Judge Sherlock concluded that the Commission applied an incorrect standard of review to the Hearing Officer's decision. Upon examination of the full record, Judge Sherlock concluded that there was substantial credible evidence supporting the Hearing Officer's findings that the Counties did not discriminate against Longsoldier.

10

¶20    Judge Sherlock proceeded to discuss a number of other procedural defects that contributed to his conclusion that the Commission's final agency decision must be reversed. First, he noted that due to technical problems the Commission kept no record of the first hearing. Although the Commission did hold another hearing to address the lack of a record, Judge Sherlock opined that the Commissioners did not discuss "the evidentiary defects that led them to alter the hearing officer's order or what evidence supported their modification of that order." Judge Sherlock next discussed a number of ex parte communications that occurred between the Commission and the Commission's attorney. He noted that the administrative rules required the attorney to limit her consultation with the Commission to points of law, but that the attorney had commented on and inaccurately described certain factual matters in the record to a new Commissioner. The attorney also advised the Commissioner that the Commissioner did not need to review the entire record. Finally, Judge Sherlock addressed the fact that the damage award at which the Commission ultimately arrived was not discussed at any public meeting; rather, it was discussed between the attorney and one or more members of the Commission after the public meeting adjourned.

¶21    Judge Sherlock concluded that "the cumulative weight of this series of procedural problems, from using the wrong standard of review in reviewing the hearing officer's decision, to all of the other procedural defects noted above, have the cumulative effect of requiring a reversal of the activities of the [Commission] in this case." In reversing and vacating the Commission's final agency decision, Judge Sherlock determined that the Commission's decision was "clearly erroneous in the view of the evidence in the whole

record" and that it was "arbitrary and capricious in its rejection of the hearing officer's findings of fact." After reviewing the record evidence and considering all of the procedural defects and the Commission's discussions of the case, Judge Sherlock determined that the appropriate resolution of the judicial review was to reinstate the Hearing Officer's decision as the final agency decision. Relying on *Brackman v. Board of Nursing*, 258 Mont. 200, 851 P.2d 1055 (1993), Judge Sherlock concluded that such a remedy would "set this case back to the place where it existed in the administrative process before any serious procedural errors had been made."

¶22 On appeal, the Estate argues that the Hearing Officer's determination that there was no evidence of any discriminatory animus on the part of the Counties was a conclusion of law, not a finding of fact. The Estate therefore contends that the Commission did not apply the wrong standard of review in modifying those determinations because legal conclusions are reviewed for correctness. The Estate next contends that even if the Hearing Officer's determinations could be considered findings of fact, the Hearing Officer failed to address non-animus-based discrimination. Because the Hearing Officer failed to make such findings, the Estate alleges that under *Christie v. Department of Environmental Quality*, 2009 MT 364, 353 Mont. 227, 220 P.3d 405, the Commission was entitled to make its own findings. Finally, the Estate contends that the Commission properly analyzed whether the Hearing Officer's findings were clearly erroneous; therefore, the Commission applied the correct standard of review.

¶23 We first address the Estate's contention that the Hearing Officer's findings of fact numbers 114 and 115 were conclusions of law. Although there is no "rule or principle that

12

will unerringly distinguish a factual finding from a legal conclusion," determining whether there is evidence of intent to discriminate is a "pure question of fact." *Pullman-Standard, Div. of Pullman v. Swint*, 456 U.S. 273, 288, 102 S. Ct. 1781, 1789 (1982) (citation and internal quotes omitted). The Hearing Officer properly characterized these as findings of fact.

¶24 Next, *Christie* does not support the Estate's position. In *Christie*, the hearing officer did not make findings that addressed the central issue of the case. *Christie*, ¶ 28. Here, in contrast, the Hearing Officer's findings on discrimination were findings on the issue at the heart of the Estate's human rights claim. Thus, our holding in *Christie* that the agency could make a finding of fact regarding the central issue where its hearing officer failed to do so is inapposite.

¶25 Under MAPA, an agency may reject a hearing officer's findings of fact only if, upon review of the complete record, "the agency first determines that the findings 'were not based upon competent substantial evidence.'" *Moran v. Shotgun Willies*, 270 Mont. 47, 51, 889 P.2d 1185, 1187 (1995) (quoting § 2-4-621(3), MCA); *accord State Pers. Div.*, ¶ 25 (relying on § 2-4-621(3), MCA, to conclude that "[a]n agency in its final order may not reject or modify the hearing officer's findings of fact unless it first determines from a review of the complete record and states with particularity in the order that the findings of fact were not based upon competent substantial evidence"); *Ulrich v. State ex rel. Board of Funeral Serv.*, 1998 MT 196, ¶ 14, 289 Mont. 407, 961 P.2d 126 (concluding that an agency "may reject the examiner's findings only if they are not based upon competent, substantial evidence" and abuses its discretion pursuant to § 2-4-704(2)(a)(vi), MCA, if it

13

"reject[s] the hearing examiner's findings in violation of § 2-4-621(3), MCA").[1] Consequently, an agency's rejection or modification of a hearing officer's findings "cannot survive judicial review unless the court determines as a matter of law that the hearing examiner's findings are not supported by substantial evidence." *Schmidt*, ¶ 31 (citing *Moran*, 270 Mont. at 51, 889 P.2d at 1187). An agency abuses its discretion if it modifies the findings of a hearing officer without first determining that the findings were not supported by substantial evidence. *State Pers. Div.*, ¶ 26; *Ulrich*, ¶ 14; *Moran*, 270 Mont. at 50, 889 P.2d at 1187.

¶26    A reviewing body's standard on review "is not whether there is evidence to support findings different from those made by the trier of fact, but whether substantial credible evidence supports the trier's findings." *Schmidt*, ¶ 31. "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. It consists of more [than] a mere scintilla of evidence but may be less than a preponderance." *State Pers. Div.*, ¶ 19. The evidence is viewed in the light most favorable to the prevailing party when determining whether findings are supported by substantial credible evidence. *Welu v. Twin Hearts Smiling Horses, Inc.*, 2016 MT 347, ¶ 12, 386 Mont. 98, 386 P.3d 937.

---

[1] *Core-Mark International, Inc. v. Montana Board of Livestock*, 2014 MT 197, ¶ 19, 376 Mont. 25, 329 P.3d 1278, cited by the Estate, misstates the standard of review an agency applies to a hearing officer's findings. The case cited in *Core-Mark*, however, correctly states the applicable standard of review prescribed by § 2-4-621(3), MCA. *Ulrich*, ¶ 14. We also misstated the standard of review in *Montana Department of Transportation v. Montana Department of Labor & Industry*, 2016 MT 282, ¶ 13, 385 Mont. 274, 384 P.3d 49. We nevertheless applied the correct standard in our analysis. *Mont. Dept. of Transp.*, ¶ 24.

¶27 The Commission did not determine that the Hearing Officer's findings regarding discrimination were not based upon competent substantial evidence. Rather, the Commission concluded that the Hearing Officer "misapprehended the effect of the evidence" relating to discrimination based on disability and determined on that basis that the Hearing Officer's findings were "clearly erroneous." The Commission did not have the authority to modify the Hearing Officer's findings on that ground. Section 2-4-621(3), MCA; *Schmidt*, ¶ 31; *State Pers. Div.*, ¶ 25; *Ulrich*, ¶ 14; *Moran*, 270 Mont. at 51, 889 P.2d at 1187. As a matter of law, the Commission applied the wrong standard of review; it therefore abused its discretion. *State Pers. Div.*, ¶ 26; *Ulrich*, ¶ 14; *Moran*, 270 Mont. at 50, 889 P.2d at 1187.

¶28 Based on his review of the record, Judge Sherlock determined that it contained substantial evidence to support the Hearing Officer's findings of fact. We agree. The evidence demonstrates that the Hospital's discharge instructions advised that Longsoldier should follow up with a medical provider in three to five days; the Hospital did not instruct the Counties on what to do if his condition worsened. Detention center staff appreciated that Longsoldier was experiencing alcohol withdrawal symptoms, but expected—consistent with their experience—that the symptoms would subside. And when they inquired further, they were told that Longsoldier was not ill and just didn't want to be in jail.

¶29 The Commission emphasized the evidence that Longsoldier's prescriptions were not filled and that authorities from both Counties were aware of the fact that he was not given the medication prescribed. But this is a discrimination claim under the Human Rights

15

Act, not a claim for negligence.[2]  Under the Human Rights Act, it is a prohibited "discriminatory practice for the state or any of its political subdivisions . . . to refuse, withhold from, or deny to a person any . . . services . . . *because of* . . . physical or mental disability."  Section 49-2-308(1), MCA (emphasis added).  The Estate's discrimination claim therefore required it to demonstrate that the Counties failed to fill Longsoldier's prescriptions because he suffered from alcoholism.  *Albert v. City of Billings*, 2012 MT 159, ¶ 27, 365 Mont. 454, 282 P.3d 704 (quoting Admin. R. M. 24.9.610(2)(a)(iii) and concluding that in order to establish a discrimination claim, a claimant is required to demonstrate that "he was 'treated differently because of membership in [the] protected class'").[3]  The Commission did not point to any such evidence, nor does the Estate.  In fact, the Commission did not modify the Hearing Officer's finding that the "substantial and credible evidence of record established that none of [the Counties' personnel] considered [Longsoldier's symptoms] to be a disabling or even life-threatening condition."

¶30    The Hearing Officer concluded that Longsoldier suffered from a disability—alcoholism—and that he was denied a government service—medical care.  The Hearing Officer concluded also that Longsoldier suffered terribly in the Counties' custody.  Based

---

[2] Blaine County represents that the Estate has filed a separate negligence suit against the Counties in the Eighth Judicial District Court.

[3] Federal Courts construing the Americans with Disabilities Act—on which the Human Rights Act is modeled—similarly conclude that inadequate treatment for a disability does not establish a discrimination claim based upon disability.  *E.g.*, *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1021-22 (9th Cir. 2010) (concluding that a prisoner's estate failed to establish a claim under the ADA that the prison excluded the inmate from outdoor recreation because he suffered from depression); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners").

on the evidence before the Hearing Officer, however, a reasonable mind could accept that the Counties' failures to provide Longsoldier with further medical treatment were not based on any discriminatory animus toward Longsoldier. That is the inquiry dictated by MAPA's standard of review. Section 2-4-621(3), MCA; *State Pers. Div.*, ¶ 25; *Ulrich*, ¶ 14; *Moran*, 270 Mont. at 51, 889 P.2d at 1187.

¶31 We conclude that the Commission lacked authority to modify the Hearing Officer's findings of fact because those findings were supported by competent substantial evidence. Accordingly, we hold that Judge Sherlock correctly concluded that the Commission improperly modified the Hearing Officer's findings.

¶32 *2. Whether Judge Reynolds correctly concluded that Judge Sherlock erred as a matter of law by reinstating the Hearing Officer's decision as the final agency decision.*

¶33 Judge Reynolds concluded that Judge Sherlock "was correct in determining that procedural errors in this matter warranted a reversal of the [Commission's] order." Judge Reynolds noted that Judge Sherlock used a procedure this Court previously has approved when he reinstated the Hearing Officer's decision as the final agency decision. (Citing *Benjamin v. Anderson*, 2005 MT 123, 327 Mont. 173, 112 P.3d 1039; *Moran*; *Brackman*.) Judge Reynolds nevertheless determined that "the remedy fashioned by [Judge Sherlock] of adopting the hearing officer's decision . . . as the final agency decision improperly deprives [the Estate] of meaningful review of that decision as required by the Human Rights Act."

¶34 Judge Reynolds opined that the Act "contemplates a multi-step administrative process for reviewing claims of alleged discrimination." He concluded that Judge

17

Sherlock's remedy "short-circuits this review process" because it deprived the Estate of review by the Commission. Judge Reynolds held, "Such a remedy is a manifest error of law, and altering this remedy is necessary to prevent manifest injustice." Judge Reynolds granted the Estate's motion to alter or amend, in part, and remanded the case to the Commission to conduct a new review of the Hearing Officer's decision.

¶35 The Estate asserts that Judge Reynolds correctly granted its motion to alter or amend. The Estate argues that § 49-2-505(5), MCA, requires that the Commission, not a hearing officer, render a final agency decision. The Estate cites *Frasceli, Inc. v. State Department of Revenue*, 235 Mont. 152, 766 P.2d 850 (1988), to support its position. The Estate claims further that *Benjamin*, *Moran*, and *Brackman* "are inapposite" for various reasons. Remanding the case to the Commission, the Estate contends, "simply sets the case back on the statutory track" required under the Human Rights Act and MAPA.

¶36 As Judge Reynolds recognized, we have previously affirmed district court holdings that adopted a hearing officer's determination as the final agency decision. *Brackman*, 258 Mont. at 209, 851 P.2d at 1060 (concluding that a district court did not err in ordering an agency to adopt the hearing officer's order in its entirety because the agency abused its discretion by rejecting the hearing officer's findings without finding that they were not supported by substantial evidence); *Moran*, 270 Mont. at 53, 889 P.2d at 1188 (concluding that a district court did not err in ordering that the Commission adopt the hearing officer's findings and conclusions because the Commission's "legal conclusions concerning the sufficiency of the evidence to support the hearing examiner's findings were incorrect"); *Benjamin*, ¶ 70 (affirming a district court's decision to re-impose the hearing examiner's

18

award of damages because the Commission's reduction of the damages award was arbitrary). The Estate's attempt to distinguish these cases is unpersuasive. Similar to *Brackman* and *Moran*, here the Commission did not find that the Hearing Officer's findings were not supported by substantial evidence.

¶37 The Estate's reliance on *Frasceli* also is unpersuasive. We did conclude in *Frasceli* that a district court abused its discretion by ordering the reinstatement of a hearing officer's proposed order. *Frasceli*, 235 Mont. at 157, 766 P.2d at 853. But the case is distinguishable. The hearing officer in *Frasceli* issued a proposed order awarding a beer and wine license to a business. *Frasceli*, 235 Mont. at 153, 766 P.2d at 851. Prior to issuing a final agency decision that reversed the hearing officer's order and awarded the license to a different business, the Director of the Department of Revenue made personal, unannounced visits to both businesses to inspect them. *Frasceli*, 235 Mont. at 154, 766 P.2d at 850-51. We affirmed the district court's conclusion that the Director's unannounced visits violated the business's due process rights because there was no way to know to what extent the Director's inspection impacted his final decision. *Frasceli*, 235 Mont. at 157, 766 P.2d at 852. We concluded that the Director's actions "violate[d] certain other safeguards built in" by MAPA. *Frasceli*, 235 Mont. at 157, 766 P.2d at 852-53. It was within this context that we concluded that the agency should "have an objective and detached officer review the record" rather than just reinstate the hearing officer's proposed order. *Frasceli*, 235 Mont. at 157, 766 P.2d at 853. *Brackman*, *Moran*, and *Benjamin* provide more apt authority here because all involved the agency's misapplication of the legal standards governing its review.

19

¶38     We are unconvinced by the Estate's additional argument that § 49-2-505(5), MCA, precludes adopting the Hearing Officer's decision as the final agency decision. The Estate is correct that § 49-2-505, MCA, outlines the procedure a discrimination claim must follow from the contested case hearing to judicial review. In that context, § 40-2-505(5), MCA, provides that if a party appeals the decision of a hearing officer, the Commission must hear the case within 120 days of the appeal. Section 49-2-505(5), MCA, provides further: "The commission may affirm, reject, or modify the decision in whole or in part. The commission shall render a final agency decision within 90 days of hearing the appeal." Section 49-2-505(5), MCA, thus prescribes certain timelines the Commission must follow once it receives an appeal of a hearing officer's decision and outlines what the Commission may do with the decision after hearing the appeal.

¶39     When we construe a statute, we do so by "reading and interpreting the statute as a whole, without isolating specific terms from the context in which they were used by the Legislature." *Mashek v. Dep't of Pub. Health & Human Servs.*, 2016 MT 86, ¶ 10, 383 Mont. 168, 369 P.3d 348 (citation and internal quotations omitted). The Estate interprets one phrase within one sentence out of three in § 49-2-505(5), MCA, to mean that only the Commission can render a final agency decision. Such an interpretation isolates the specific terms—that the "commission shall render a final agency decision"—from the context in which they were used by the Legislature—the general procedure for appeal of the hearing officer's decision in a discrimination claim. The Estate's interpretation ignores that a hearing officer's decision can become final under certain circumstances, such as when no appeal is taken pursuant to § 49-2-505(3)(c), MCA.

20

¶40 Of course, MAPA also confers ultimate authority on the District Court. As discussed, the Act explicitly provides that the agency "may not reject or modify the [Hearing Officer's] findings of fact unless the agency first determines . . . that the findings of fact were not based upon competent substantial evidence." Section 2-4-621(3), MCA; *accord Schmidt*, ¶ 31; *State Pers. Div.*, ¶ 25; *Moran*, 270 Mont. at 51, 889 P.2d at 1187. Judge Reynolds remanded the case because the Estate was deprived of "meaningful review." But that meaningful review already occurred. Based on his review of the complete evidentiary record, Judge Sherlock concluded that the Hearing Officer's findings of fact were supported by substantial evidence. Judge Reynolds's order did not alter or amend Judge Sherlock's conclusion. We have affirmed Judge Sherlock's conclusion. Opinion, ¶ 31. Accordingly, if the case were to be remanded to the Commission, the Commission could not determine that the findings of fact were not based upon substantial evidence; the Commission thus could not modify the Hearing Officer's findings that there was no evidence of discriminatory animus by the Counties. *See Fiscus v. Beartooth Elec. Coop.*, 180 Mont. 434, 437, 591 P.2d 196, 197 (1979) (concluding that when we state in an opinion "a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress") (citation and internal quotations omitted).

¶41 Because the District Court conducted a complete review of the administrative record and properly applied the applicable standard of review to the Hearing Officer's decision, there is nothing further for the Commission to review. We hold that Judge Reynolds

21

incorrectly concluded that Judge Sherlock erred as a matter of law by adopting the Hearing Officer's decision as the final agency decision.

## CONCLUSION

¶42 We affirm Judge Sherlock's order reinstating the Hearing Officer's decision as the final agency decision. We reverse Judge Reynolds's order granting the Estate's motion to alter or amend Judge Sherlock's order. Finally, we acknowledge the heartbreaking truth that Allen Longsoldier, Jr.—a gifted young man—suffered horrendously while dying slowly from alcohol withdrawal syndrome. On this record, however, the Montana Human Rights Act is not a proper legal remedy for his suffering.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE